**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VICTOR ZAVALA; EUNICE GOMEZ; ANTONIO FLORES; OCTAVIO DENISIO; HIPOLITO PALACIOS; CARLOS ALBERTO TELLO; MAXIMILIANO MENDEZ; ARTURO ZAVALA; FILIPE CONDADO; LUIS GUTIERREZ; DANIEL ANTONIO CRUZ; PETR ZEDNEK; TERESA JAROS; JIRI PFAUSER; HANA PFAUSEROVA; PAVEL KUNC; and MARTIN MACAK, on behalf of themselves and all others similarly situated, | : | Civil Action No. 03-5309 (JAG) |
| Plaintiffs, | : | **OPINION** |
| v. | : | |
| WAL-MART STORES, INC., | : | |
| Defendant. | : | |

APPEARANCES:

Gilberto M. Garcia
Mary Ann Kricko
GARCIA AND KRICKO
ATTORNEYS AT LAW
560 Sylvan Avenue
Englewood Cliffs, New Jersey  07632

James L. Linsey
Thomas N. Ciantra
Oriana Vigliotti
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York  10036

ATTORNEYS FOR PLAINTIFFS

Robert H. Bernstein
REED SMITH LLP
The Legal Center
One Riverfront Plaza, First Floor
Newark, New Jersey  07102-5400

David P. Murray
Randy Branitsky
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, D.C.  20006-1238

ATTORNEYS FOR DEFENDANT

Michaelene Loughlin
LOUGHLIN & LATIMER
131 Main Street, Suite 235
Hackensack, N.J.  07601

ATTORNEY FOR *AMICUS CURIAE* CZECH REPUBLIC

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on the motion to dismiss Count One and Count Two of Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). For the reasons set forth below, this motion will be granted.

**INTRODUCTION**

The background to this case is set forth in this Court's Opinion of October 7, 2005 (the "Dismissal Opinion").  See Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295 (D.N.J. 2005). In this Court's Order of September 30, 2005, Wal-Mart's motion to dismiss was granted in part, and Counts One and Two of the Complaint were dismissed without prejudice.  On November 21, 2005, Plaintiffs filed the Second Amended Complaint.  Count One of the Second Amended

Complaint alleges violation of RICO, 18 U.S.C. § 1962(c). Count Two alleges RICO conspiracy, in violation of 18 U.S.C. § 1962(d). On January 20, 2006, Wal-Mart filed the instant motion to dismiss these RICO claims.

## ANALYSIS

I.   Governing Legal Standards

    A.   Standard for a Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set

forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## II.   Defendant's 12(b)(6) Motion to Dismiss

"In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004); see also Sedima v. Imrex Co., 473 U.S. 479, 496 (1985). The Supreme Court has construed § 1962(c) to also require that a plaintiff plead: 1) distinctness, as to the RICO 'person' and 'enterprise,' Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); and 2) proximate causation of the claimed injury by the racketeering conduct, Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). Count One fails to meet these requirements. Moreover, Plaintiffs have failed to state a valid claim of involuntary servitude.

### A.   The distinctness requirement

The Supreme Court has held that the language of § 1962(c) creates a pleading requirement of distinctness: "to establish liability under § 1962(c) one must allege and prove the

existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Kushner, 533 U.S. at 161.

Count One of the Second Amended Complaint contains a serious, fatal problem, in that it alleges that the RICO person and the RICO enterprise are the same. Plaintiffs first define the RICO person: "At all relevant times, Wal-Mart and its various contractors were 'persons' within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c)." (Sec. Am. Compl. ¶ 124.) Plaintiffs next define the RICO enterprise: "At all relevant times, Wal-Mart and its contractors formed an association-in-fact . . . referred to as the 'Wal-Mart Enterprise.'" (Sec. Am. Compl. ¶ 125.) If the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical.

This problem is not limited to these two statements. Plaintiffs then allege that "Wal-Mart and its various maintenance contractors . . . engaged in 'racketeering activity' within the meaning of 18 U.S.C. § 1961(1)" by engaging in certain predicate acts. (Sec. Am. Compl. ¶ 128.) Here, and elsewhere in the Second Amended Complaint, Plaintiffs allege that both Wal-Mart and the contractors committed the predicate acts. The language of the statute specifies that the 'person' commits the predicate acts: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c). The 'person' conducts the enterprise through a pattern of racketeering activity. When Plaintiffs allege that the contractors engaged in the predicate acts that constitute racketeering activity, as they do at numerous points in the Second Amended Complaint, this confirms that the contractors are within the meaning of

5

'person.'  See Whelan v. Winchester Prod. Co., 319 F.3d 225, 229 (5th Cir. 2003) ("For purposes of § 1962(c) . . . the plaintiff must demonstrate . . . that the RICO 'person' who commits the predicate acts is distinct from the enterprise.")  Because both Wal-Mart and the contractors engaged in the racketeering activity, and also constitute the enterprise, the RICO person and the RICO enterprise are identical.  The enterprise is the same as the person, merely referred to by a different name.  Kushner states clearly that this is impermissible.  Kushner, 533 U.S. at 161.

In their opposition brief, however, Plaintiffs appear to take the position that Wal-Mart alone is the person, and the association-in-fact of Wal-Mart and the contractors is the enterprise. (Pls.' Opp. Br. 14-18.)  Under that theory, the RICO person and the RICO enterprise are not identical.  The Second Amended Complaint, however, does not embody this theory.  Rather, throughout, the actors who are alleged to have performed the racketeering activities are both Wal-Mart and the contractors.  (See, e.g., Sec. Am. Compl. ¶¶ 87 - 116.)  Thus, for example, in the section entitled, "The Wal-Mart RICO Enterprise," Plaintiffs allege that Wal-Mart and the contractors created and constituted the enterprise, and then state: "[t]he participants in the Wal-Mart Enterprise conducted its affairs by employing, encouraging, harboring and trafficking in the labor of plaintiff immigrants . . ."  (Sec. Am. Compl. ¶ 41.)

As another example, in the section entitled, "Forced Labor and False Imprisonment by Wal-Mart," despite the fact that the heading states that Wal-Mart performed the predicate acts, the first paragraph alleges that both Wal-Mart and the contractors used coercion to compel labor. (Sec. Am. Compl. ¶ 118.)  Plaintiffs' contention that the 'person' who conducted the enterprise through a pattern of racketeering is Wal-Mart alone is not supported by the Second Amended Complaint.

6

Plaintiffs' failure to allege a RICO 'person' distinct from the RICO 'enterprise' requires that Count One be dismissed for failure to state a claim upon which relief can be granted. This pleading failure is not an omission that can be remedied by amendment; rather, it is woven into the fabric of the Second Amended Complaint, and could not be removed without restructuring the entire RICO theory. Because no amendment could make Count One of the Second Amended Complaint withstand a motion to dismiss, amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.") On this basis alone, Count One must be dismissed with prejudice.

B.   The RICO claim for involuntary servitude

As just discussed, to state a RICO claim, Plaintiffs must allege "a pattern of racketeering activity," pursuant to 18 U.S.C. § 1962(c). Plaintiffs allege that, pursuant to 18 U.S.C. §§ 1961(1) and (5), one such pattern involved acts in violation of § 18 U.S.C. § 1584, titled "Sale into involuntary servitude." As also discussed, Plaintiffs' allegations of involuntary servitude fail to meet the requirement that the person be distinct from the enterprise.

Even if this Court were to accept Plaintiffs' argument that Wal-Mart alone is the RICO 'person,' and separate the allegations about Wal-Mart from the allegations about the contractors, Plaintiffs have failed to state a claim that Wal-Mart performed acts constituting involuntary servitude. As to Wal-Mart's conduct, Plaintiffs allege no more than that Wal-Mart locked the stores' doors at night and required workers to find a manager with a key in order to exit. This is insufficient to state a claim for involuntary servitude.

The Supreme Court has stated that "the term 'involuntary servitude' necessarily means a

7

condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." United States v. Kozminski, 487 U.S. 931, 952 (1988).  As observed by the Third Circuit, "[m]odern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 999 (3d Cir. 1993).  Plaintiffs do not allege that a Wal-Mart manager ever refused to allow exit, and thus no claim of forced confinement has been made.  Moreover, the Third Circuit instructs that, where a person may choose to work or not to work, there cannot be involuntary servitude.  Id. at 1000.  If a request to a manager resulted in the opening of the door, Plaintiffs could choose not to work.  As to Wal-Mart, under 18 U.S.C. § 1584, Plaintiffs have failed to failed to state a claim upon which relief can be granted.

Moreover, Plaintiffs have not alleged that the statute's mental state requirements are met: § 1584 requires that the conduct be committed "knowingly and willfully."  Plaintiffs have not alleged that Wal-Mart locked its store doors at night knowing that workers would be placed into a condition of servitude.

Plaintiffs' RICO claim, based on predicate acts of involuntary servitude, will be dismissed with prejudice because repleading is futile.  In the Dismissal Opinion, this Court held that Plaintiffs had failed to state a claim that Wal-Mart committed acts of involuntary servitude, based on similar reasoning – the allegations were insufficient because they did not allege that the employees had no choice.  Plaintiffs have had the opportunity to amend the Complaint to correct this deficiency and have failed to do so.  Because amendment appears futile, this claim will be dismissed with prejudice.

8

      C.      <u>The RICO claims for immigration violations and money laundering: the proximate cause requirement</u>

A plaintiff may sue for damages under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury. <u>Holmes</u>, 503 U.S. at 268. A claim may be dismissed for failure to plead proximate cause adequately: "we read section 1964(c) as requiring a RICO plaintiff to make two related but analytically distinct threshold showings . . . : (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." <u>Maio v. Aetna Inc.</u>, 221 F.3d 472, 483 (3d Cir. 2000). To withstand a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), a complaint for damages under § 1964(c), for violation of § 1962(c), must allege "facts sufficient to support an inference of proximate causation." <u>Pelullo v. Nat'l Union Fire Ins. Co.</u>, 131 Fed. Appx. 864, 867 (3d Cir. 2005).

In <u>Holmes</u>, the Supreme Court set forth the analysis of proximate cause under RICO, explained by the Third Circuit as follows:

> The formal factors of proximate cause in RICO are . . .: (1) the directness of the injury – "the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing], as distinct from other, independent, factors;'" (2) the difficulty of apportioning damages among potential plaintiffs – "allowing recovery by indirectly injured parties would require complicated rules for apportioning damages;" and, (3) the possibility of other plaintiffs vindicating the goals of RICO – "direct victims could generally be counted on to vindicate the policies underlying" RICO in a better manner than indirect victims.

<u>Allegheny Gen. Hosp. v. Philip Morris, Inc.</u>, 228 F.3d 429, 443 (3d Cir. 2000) (quoting from <u>Holmes</u>, 503 U.S. at 268-69).

Although <u>Holmes</u> lists three factors, the Third Circuit has observed that the Supreme

9

Court put primary emphasis on the direct injury factor in the proximate cause analysis. Brokerage Concepts v. U.S. Healthcare, Inc., 140 F.3d 494, 520-21 (3d Cir. 1998). Similarly, in Steamfitters, the Third Circuit gave the greatest weight to the directness of the injury, observing "[t]he tortured path that one must follow from" the alleged wrongdoing to injury. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 930 (3d Cir. 1999). This Court follows suit and in this case puts primary emphasis on the directness factor in the proximate cause analysis.

Count One alleges three categories of predicate violations: 1) violations of immigration law, pursuant to 8 U.S.C. § 1324; 2) involuntary servitude, pursuant to 18 U.S.C. § 1584; and 3) "conspiracy to money launder the proceeds of the aforesaid criminal acts," pursuant to 18 U.S.C. § 1956(h). Plaintiffs' short "proximate causation" paragraph makes two causal assertions relevant to the RICO claims: 1) "systematic violation of immigration law . . . was the necessary means through which plaintiffs were denied proper compensation, and in some cases physically beat up, unlawfully imprisoned and coerced into continuing to work at Wal-Mart;" and 2) "money laundering also directly harmed plaintiffs inasmuch as it shielded the enterprise from detection and thereby continued its existence." (Sec. Am. Compl. ¶ 121.) As to the RICO claims for immigration violations and money laundering, the path from wrongdoing to injury is too indirect to meet the proximate cause requirement.

Plaintiffs claim that they suffered "direct economic harm" from the immigration violations, but do not explain how this is so. (Pls.' Opp. Br. 37.) Plaintiffs do not clearly articulate a theory of causation linking the immigration predicate acts to the claimed injuries. In their brief, Plaintiffs variously invoke three theories: 1) the plan of exploitation theory; 2) the

necessary precondition theory; and 3) the hiring cost reduction theory.[1]

The first theory is advanced by Plaintiffs when they contend that "participants in the enterprise committed the racketeering acts just so they could economically exploit plaintiffs." (Pls.' Opp. Br. 39.) The implication is that Wal-Mart conducted the immigration violations and the underpayment as steps in a plan of exploitation. The second theory is a corollary to this: "plaintiffs were directly harmed by the immigration predicates because Wal-Mart could obtain janitorial labor at rates far below legally mandated levels only because it exploited the irregular immigration status of the janitors." (Pls.' Opp. Br. 39.) The implication is that commission of the immigration predicates provided the necessary precondition to the economic exploitation through wage underpayment. These are similar theories of indirect injury.

Neither theory alleges that the immigration violations directly injured Plaintiffs. Rather, the path from wrongdoing to injury has two steps. First, the immigration predicate acts caused the Plaintiffs to have immigrant status, which is implied to be a position of vulnerability to economic exploitation. Second, the position of vulnerability caused an increased risk of economic exploitation through underpayment of wages. As this analysis shows, the injury at the end is an indirect result of the acts at the beginning.

Plaintiffs have not alleged a sufficiently direct injury to meet the proximate cause requirement. This defect alone precludes finding that they have alleged proximate cause, and their position is further weakened by the presence of independent and intervening causes in the

---

[1] The hiring cost reduction theory is easily rejected. Plaintiffs propose that, by hiring workers who are illegal immigrants, Wal-Mart avoided the hiring costs associated with legal compliance. (Pls.' Opp. Br. 12.) This theory has no explanatory power for wage levels, as Wal-Mart saves the same amount in hiring costs no matter what wage the workers receive. There is no causal connection whatever between lower hiring costs and wage underpayment.

causal chain, such as the decision of the employer to employ at a particular wage, and the decision of the worker to work at that wage. Such decisions may be related to the irregular immigration status, but are largely independent and intervening. As Wal-Mart points out, when independent causes intervene in the sequence, this weakens the possible causal connection between wrongdoing and injury. Anderson, 396 F.3d at 270; Brokerage Concepts, 140 F.3d at 521 (inquiring whether an injury is "more appropriately attributable to an intervening cause that was not a predicate act under RICO.")

This proximate cause analysis receives substantial support from the recent decision of the Supreme Court in Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006). In Anza, the Court held that the plaintiff could not maintain its claim under 18 U.S.C. § 1962(c) because it had failed to allege adequately that the RICO predicate act proximately caused the injury claimed. Plaintiff Ideal sued defendant National Steel, alleging that National was engaged in an illegal racketeering scheme with RICO predicate acts of failing to charge customers state sales tax, allowing National to reduce prices and gain market share over Ideal. National moved to dismiss Ideal's complaint under FED. R. CIV. P. 12(b)(6). The district court granted the motion; the Second Circuit reversed the district court; and the Supreme Court reversed the Second Circuit.

In explaining the Court's determination that Ideal had failed to satisfy the proximate cause requirement under Holmes, Justice Kennedy began by emphasizing that Holmes requires a "direct relation between the injury asserted and the injurious conduct alleged." Id. at 1996 (quoting Holmes, 503 U.S. at 268.) The Court held that National's predicate acts of failing to charge sales tax did not directly injure Ideal. Id. at 1997. The Court relied heavily on two observations. Id. First, Ideal was not the direct victim of the predicate acts – the state was. Id.

Second, the predicate acts (defrauding the state) were "entirely distinct" from the immediate cause of Ideal's injuries (offering lower prices).  Id.

In the instant case, as in Anza, the predicate acts of transporting, harboring and encouraging aliens are "entirely distinct" from the immediate cause of Plaintiffs' injuries (underpayment of wages).  This supports the conclusion that Plaintiffs have failed to meet the proximate cause requirement.

In Anza, the Court discussed the issue further, explaining that "[t]his conclusion is confirmed by considering the directness requirement's underlying premises."  Id.  The Court considered how difficult it would be to ascertain the damages caused by the predicate acts and, in essence, found that the multitude of intervening factors made ascertaining damages extremely complicated: National might have lowered its prices for reasons other than the predicate acts, and Ideal might have lost sales for reasons other than National's lower prices.  Id.

The same reasoning holds in the instant case: ascertaining damages would be unmanageably complex due to the two-step, indirect nature of the theory of causation.  As to the first step, the Court would have to apportion the responsibility of Wal-Mart relative to that of the contractors, and the workers themselves, for the immigration violations that caused the irregular immigration status.  Following that, for the second step, establishing the damages caused by irregular immigration status requires an analysis with many unknowns.  Wal-Mart may have underpaid wages for reasons other than the workers' immigration status, and the workers might have worked for low wages for reasons other than their immigration status.  It would be extremely difficult to ascertain what part of the wage underpayment damage was caused by the immigration status factor.

13

Furthermore, the complexity is increased by the fact that there are over two hundred claimants in the plaintiff class. Some workers may have had an irregular immigration status for reasons unconnected to Wal-Mart. It would be complex to differentiate the damaging effect of Wal-Mart-induced irregular immigration status from the effect of non-Wal-Mart-induced irregular immigration status.

Moreover, the Court would have to consider broader economic questions. To what extent was the wage underpayment caused by conditions in the general labor market? To what extent was the wage underpayment driven by an oversupply of workers in the market, unconnected to immigration status? Was English language competence an intervening variable? The Anza Court held that, when the damage determination would be so complex and difficult, this illustrates the lack of direct causal connection. Id. at 1997. As Justice Kennedy observed: "The element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." Id. at 1998.

It is worth noting that the Supreme Court specifically criticized the Second Circuit's reliance on an intent theory similar to that proposed by Plaintiffs in this case. Id. The Court stated that a plaintiff cannot "circumvent" the directness requirement simply by claiming that the predicate acts were performed with intent to produce the injury. Id. Thus, in the instant matter, even if Wal-Mart committed the predicate immigration violations with the intent to later underpay wages, this does not circumvent the Holmes requirement of showing a direct causal connection between predicate act and injury.

The cases Plaintiffs cite to support their argument of direct injury – Commer. Cleaning Servs. v. Colin Serv. Sys., 271 F.3d 374, 383 (2d Cir. 2001), Mendoza v. Zirkle Fruit Co., 301

F.3d 1163, 1166 (9th Cir. 2002), Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 606 (6th Cir. 2004), and Williams v. Mohawk Indus., 411 F.3d 1252, 1262 (11th Cir. 2005) – are distinguishable from the instant matter.  In all four cases, the plaintiffs had alleged that the *hiring* of illegal immigrants proximately caused injury by depressing wages.  The distinction is significant.  The Second Amended Complaint in this case does not allege that Wal-Mart violated the laws barring the hiring of illegal immigrants; as Wal-Mart observes, the Dismissal Opinion held that Plaintiffs had failed to state a valid claim regarding hiring under 8 U.S.C. § 1324a(a)(1)(A), and Plaintiffs did not reassert a hiring violation in the Second Amended Complaint.  A causal inference that links hiring of illegal immigrants to wage levels might be reasonable and direct, but Plaintiffs cannot rely here on any such inference because they have not alleged hiring as a predicate violation.

Plaintiffs' argument that money laundering proximately caused their injuries is even less direct.  Plaintiffs contend that "[m]oney laundering also directly harmed plaintiffs inasmuch as it shielded the enterprise from detection and thereby continued its existence."  (Sec. Am. Compl. ¶ 121.)  This statement is paradoxical because it fails to actually allege any direct harm while claiming to do so.  Rather, on its face, it alleges only that money laundering allowed an injurious process to continue; its effect is, at most, an indirect one.  Plaintiffs thus fail to allege any direct injury to Plaintiffs from money laundering.

To have a direct causal connection to a harm, Plaintiffs must allege that the money laundering caused an injurious act.  They have not done so.  "When an injury is indirect, remote, and many steps away from the alleged cause, it is unadvisable to allow a case to proceed." Allegheny, 228 F.3d at 445.  Such is the case here.

Plaintiffs' RICO claim, based on predicate acts of immigration violations and money laundering, will be dismissed with prejudice because repleading is futile. Plaintiffs' allegations are clear, and the absence of a viable theory of direct and proximate causation is clear as well. This Court sees no possibility for Plaintiffs to amend the Second Amended Complaint to satisfy the proximate cause requirement. Because amendment is futile, Count One will be dismissed with prejudice.

D.  RICO Conspiracy

Count Two of the Second Amended Complaint alleges that Wal-Mart and the contractors conspired to violate § 1962(c), in violation of § 1962(d). Because Plaintiffs have failed to state any valid claim under § 1962(c), their claim under § 1962(d) must fail. "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993). Because the substantive claims cannot be replead, amendment of Count Two is futile, and it will be dismissed with prejudice.

## **CONCLUSION**

Plaintiffs have failed to state RICO claims upon which relief can be granted.  Count One must be dismissed because it fails to meet the distinctness requirement of 18 U.S.C. § 1962(c).  In addition, Count One must be dismissed because: 1) Plaintiffs have failed to plead adequately that the predicate acts of immigration violations and money laundering proximately caused their injuries; and 2) Plaintiffs have failed to state a claim of involuntary servitude.  Count Two must be dismissed because it is dependent on the viability of Count One.  Pursuant to FED. R. CIV. P. 12(b)(6), Defendant's motion to dismiss Counts One and Two of Plaintiffs' Second Amended Complaint is granted.  Count One and Count Two of the Second Amended Complaint are dismissed with prejudice.

      S/Joseph A. Greenaway, Jr.
      JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: August 28, 2006