NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                    :
VICTOR ZAVALA, et al.,              :
                                    :
            Plaintiffs,             :
                                    :
      -v-                           :      Civil Action No. 03-5309 (JAG)
                                    :
WAL-MART CORPORATION,               :      **OPINION AND ORDER**
                                    :
            Defendant,              :
—————————————————————:

ARLEO, U.S.M.J.

I.      Introduction

        This matter comes before the Court upon the Motion of Defendant, Wal-Mart Corporation

("Wal-Mart"), seeking an Order to Seal pursuant to L. Civ. R. 5.3(c) for materials submitted in

connection with ongoing discovery disputes between the parties. (Docket Entry No. 145).

Specifically, Wal-Mart seeks to file documents under seal allegedly containing information about

the corporation's operating costs, methods and systems as well as information concerning its

corporate practices and policies related to its janitorial services and the cleaning of Wal-Mart stores.

Wal-Mart has designated these documents as "Confidential" under the parties' Discovery

Confidentiality Order (hereinafter referred to as "Discovery Confidentiality Order").  Plaintiffs

Victor Zavala, *et al*. ("Plaintiffs") oppose this Motion.  No oral argument was heard pursuant to Fed.

R. Civ. P. 78.

Having reviewed the parties' submissions, for good cause shown, and for the reasons set forth below, Defendant Wal-Mart's Motion for an Order to Seal is hereby **DENIED IN PART AND GRANTED IN PART**.

II.     Background

This is a class action instituted by former janitors who worked at various Wal-Mart stores. The thrust of Plaintiffs' allegations is that Wal-Mart along with its outside contractors created a scheme to employ undocumented migrant workers to clean Wal-Mart stores in order to reduce maintenance labor costs below levels mandated by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.. Because of the proprietary and confidential nature of the documents and the information subject to discovery in this case, the parties requested the entry of a Discovery Confidentiality Order. On June 9, 2006, this Court entered the Discovery Confidentiality Order, which provides, in relevant part:

> Consistent with Local Civil Rule 5.3, this Confidentiality Order shall not be construed as authorizing the filing of Litigation Material under seal.  If a designating Party . . .seeks to file CONFIDENTIAL information with the Court, that designating party may file the information along with a motion to seal under Local Civil Rule 5.3(c).  The information shall be deemed temporary seal until the motion to seal has been resolved in accordance with Local Rule 5.3(c)(3).  If a non-designating Party . . . seeks to file with the Court CONFIDENTIAL information that it received during discovery, that party shall serve such information along with a request for a 'temporary order for seal' under Local Civil Rule 5.3(c)(6) upon the Court . . . .  The filing of a request for a temporary seal shall not prejudice or waive the non-designating party's ability to oppose a motion to seal or to contest the CONFIDENTIAL designation.  The Party . . . seeking CONFIDENTIAL treatment shall bear the burden of persuasion on a motion to seal.

<u>See</u> Discovery Confidentiality Order, ¶ 14.

As part of an ongoing discovery dispute between the parties, on October 27, 2006, Plaintiffs filed a motion to compel Wal-Mart to comply with its discovery obligations.  Specifically, Plaintiffs sought to have Wal-Mart provide complete and responsive answers to Plaintiffs' outstanding document requests and interrogatories relating to Wal-Mart's central management of its janitorial operations and the correlation between the janitorial labor and the corporation's retail operations.[1] Plaintiffs' October 27, 2006, letter-brief in support of its discovery motion ("October 27, 2006, letter-brief") spawned a series of letters from the parties to the Court concerning this and related discovery disputes.  The parties attached numerous documents as exhibits to their respective correspondence to the Court, which had been produced by the parties during discovery.  Specifically, Plaintiffs attached specific documents as exhibits to Plaintiffs' October 27, 2006, letter-brief, which Wal-Mart describes as follows:

1.      An email from one of Wal-Mart's contractors to Wal-Mart Divisional Vice President, Steve Bertschy, regarding payment for floor maintenance services (Appendix D to Exhs. E and F);

2.      An email from Wal-Mart's corporate management to store managers and staff regarding contracts for floor maintenance services (Exh. G);

3.      Accounting reports listing names of Wal-Mart's vendors, payments owed, and other details of invoices from Wal-Mart floor maintenance contractors at various stores in 2003 and 2004 (Exh. H);

4.      A store-by-store listing of floor maintenance contracts

---

[1]  Following a hearing on January 12, 2007, this Court entered an Order on April 4, 2007, ruling on Plaintiffs' October 27, 2006, motion to compel discovery and Wal-Mart's informal requests to compel discovery.

with Southern Cleaning Services, Inc., which are categorized by the contract terms, contract payments owed, and notes regarding individual stores' efforts to terminate their respective contracts (Exh. I);

5.      Wal-Mart's internal cost analysis of floor maintenance contracts by store and within regional divisions as compared with the cost of in-house cleaning services (Exh. J); and

6.      A sample survey response from a Wal-Mart store manager regarding terms of each individual store's floor maintenance contract and a partial log of information gathered from those surveys (Exh. K).

See Declaration of Harry Eng, of Harry Eng, Vice President of Facilities Management & Environmental Services of Wal-Mart, attached to Defendant's motion papers ("Eng Declaration"), ¶ 3.

Wal-Mart attached the following documents as exhibits to Wal-Mart's November 8, 2006, consolidated reply to Plaintiffs' October 27, 2006, letter-brief and October 31, 2006, discovery response ("Wal-Mart's November 8, 2006 consolidated reply"):

1.      Examples of invoices from floor maintenance contractors for Wal-Mart store No. 2038 in Sterling, Virginia from December 28, 2000 through October 9, 2003 (Exh. 2);

2.      Examples of invoices from floor maintenance contractors for Wal-Mart store No. 2136 in Culpeper, Virginia from June 6, 2002 through October 2, 2003 (Exh. 3);

3.      Examples of invoices from floor maintenance contractors for Wal-Mart store No. 2239 in San Antonio, Texas from February 28, 2003 through October 3, 2003 (Exh. 4); and

> 4.    A partial analysis of floor maintenance contracts at
> Wal-Mart stores, including weekly and annual costs
> and contract terms (Exh. 5).

See Eng Declaration, ¶ 4.

Finally, Plaintiffs cited selected pages from what Wal-Mart describes as its Maintenance
Manual concerning toilet bowl and trash receptacle cleaning procedures ("Wal-Mart's Maintenance
Manual") in support of Plaintiffs' Opposition to Defendant's Motions to Seal Pursuant to Local Civil
Rule 5.3, dated December 19, 2006[2] ("Plaintiffs' December 19, 2006, Opposition to Motions to
Seal"), and attached these selected pages as Attachment "A."  See Eng Declaration, ¶ 5.

During discovery, Wal-Mart designated each of the aforementioned documents attached as
exhibits to the parties' respective discovery correspondence, as "confidential" under paragraph 2 of
the Discovery Confidentiality Order.  Thereafter, upon the parties' individual applications, pursuant
to paragraph 14 of the Discovery Confidentiality Order and Local Civil Rule 5.3, this Court entered
several temporary orders, beginning on October 30, 2006,  to seal many of the documents attached
as exhibits to the parties' discovery related submissions.

On January 19, 2007, this Court entered an Order to extend the temporary seals, to
consolidate the motions for a permanent seal, and to set a deadline to file a motion for a permanent

---

[2] As a point of clarification, this Court notes that, in its Declaration of Counsel and
proposed order, Wal-Mart indicates that, as part of its instant consolidated motion to seal, Wal-
Mart is seeking to seal "Attachment A to Wal-Mart's December 19, 2006 Opposition to
Plaintiffs' Consolidated Motions to Seal Documents Pursuant to Local Civil Rule 5.3." (See
Declaration of Defendant's Counsel, ¶ 4(c); proposed order, ¶ 3).  However, when reviewing
Wal-Mart's courtesy submission of these December 19, 2006, opposition papers to the Court
along with Wal-Mart's supporting motion to seal papers, it appears defense counsel inadvertently
referred to these opposition papers as being submitted by "Wal-Mart."  Rather, this Court's
review of these documents and the official docket sheet (Docket Entry No. 135) demonstrates
that Plaintiffs, rather than Wal-Mart, submitted these opposition papers, which are the subject of
the pending consolidated motion to seal.

seal ("January 19, 2007, Order").  The Court's January 19, 2007, Order, directed, in relevant part, Wal-Mart to file one consolidated motion by January 31, 2007, addressing all requests for permanent seals for the documents protected by temporary seal in this Court's Orders entered on October 30, 2006, November 2, 2006, and December 28, 2006, respectively.

On February 7, 2007, Wal-Mart filed the pending consolidated motion for a permanent seal. Specifically, Wal-Mart seeks an Order to seal Exhibits E, F, G, H, I, J, and K attached to Plaintiffs', October 27, 2006, letter-brief; Exhibits 2, 3, 4 and 5 attached to Wal-Mart's November 8, 2006, consolidated reply; and Attachment A to Plaintiffs' December 19, 2006, Opposition to Motions to Seal.  Shortly after filing the instant motion, Wal-Mart requested that the Court seal additional documents, which Wal-Mart claims had been submitted as part of Plaintiffs' opposition to the instant motion.  In response, this Court entered an Order on February 27, 2007, including Exhibits A, B, and C attached to Plaintiffs' Opposition to Wal-Mart's instant motion to seal as additional documents which Wal-Mart requests be sealed as part of its pending motion.[3]

In support of the motion to seal, Wal-Mart emphasizes that the Discovery Confidentiality Order covered, *inter alia*, "sensitive[,] personal, financial, business, commercial, competitive, or proprietary information, or other information warranting confidential treatment under applicable laws, regulations, court orders, or agreements."  See Discovery Confidentiality Order, ¶ 2.  In reliance on the Discovery Confidentiality Order, Wal-Mart produced internal company documents

---

[3] Exhibit A attached to Plaintiffs' Opposition to the instant motion contains the same documents as those attached as Attachment A to Plaintiffs' December 19, 2006, Opposition to Motions to Seal.  Exhibit B attached to Plaintiffs' Opposition to the instant motion contains the same document as that attached as Appendix D to Exhibits E and F to Plaintiffs' October 27, 2006, letter-brief.  Exhibit C attached to Plaintiffs' Opposition to the instant motion contains the same documents as those attached as Exhibit 2 to Wal-Mart's November 8, 2006 consolidated reply.

containing allegedly confidential information that reveal sensitive business information relating to Wal-Mart's operating costs, methods and systems. Two of these documents detail the company's procedures for cleaning toilet bowls, urinals and trash bins.

In support of its motion, Wal-Mart has submitted the Eng Declaration. The declaration advances Wal-Mart's argument that should the public have access to the documents at issue, Wal-Mart's competitors would have access to confidential information about Wal-Mart's suppliers, services, and internal company practices and policies related to its janitorial services and the cleaning of Wal-Mart stores. The Eng Declaration further contends that Wal-Mart's competitors would gain insight into Wal-Mart's historical pricing structure from which competitors could extrapolate the corporation's current pricing structure. Such insight could compromise Wal-Mart's future negotiations with third-party vendors, contractors and suppliers. Finally, Wal-Mart contends that allowing the public access to documents revealing Wal-Mart's audit analysis would undermine the purposes of the audit process.

Wal-Mart further contends that no legitimate public interest exists in the disputed materials, which were submitted to the Court in connection with the parties' briefing on discovery disputes, and, thus do not relate to the merits of the case. Wal-Mart advances this same argument in support of its position that there is no less restrictive alternative to sealing the disputed documents.

In opposition, Plaintiffs primarily argue that Wal-Mart has failed to show any clearly defined and serious injury that would result if the documents are not sealed under Local Civil Rule 5.3(c). Specifically, Plaintiffs assert that none of the documents contain confidential sensitive business information concerning Wal-Mart, which would justify the denial of the public's right of access to these judicial records. Plaintiffs further contend that all of the documents at issue are over three

years old and govern Wal-Mart's <u>past</u> relations with the referenced janitorial contractors and, thus, the information is stale and irrelevant to Wal Mart's competitors.  Finally, Plaintiffs argue that many of the disputed documents, including those that relate to Wal-Mart's janitorial services and the cleaning of Wal-Mart stores, contain "mundane or public information."

This Court notes that, while Plaintiffs oppose the motion under the standard governing Rule 5.3(c), Plaintiffs, in essence, are challenging Wal-Mart's designation of the disputed documents as "Confidential" under the parties' Discovery Confidentiality Order.   Accordingly, it appears Plaintiffs' opposition is based on an objection to the Discovery Confidentiality Order pursuant to Rule 5.3(b), which governs discovery materials.  As such, this Court must analyze the instant motion under the standards governing both subsections (b)(2) and (c)(2) of Local Civil Rule 5.3.

III.   <u>Analysis</u>

   A.   <u>Local Civil Rule 5.3(c)</u>

The standard for "sealing" is set forth in New Jersey Local Civil Rule 5.3(c)(2):

> Any motion to seal or otherwise restrict public access shall be available for review by the public.  The motion papers shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.

L. Civ. R. 5.3(c)(2).  Explanatory Note 2 to L.Civ.R. 5.3 notes that "[t]he Rule is intended to reflect Supreme Court and Third Circuit law and does not set forth in detail all standards established by precedent."

It is well-established in the Third Circuit that there is "a common law public right of access to judicial proceedings and records."  <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001).  Thus,

when a party files a motion to seal certain documents in the record, the moving party must show

"good cause" to warrant the relief.  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir.

1994).

      In Pansy, the Third Circuit identified factors to be considered when determining whether

good cause for a protective order exists. These factors, which were further articulated in Glenmede

Trust Co., v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995), include:

1)     whether disclosure will violate any privacy interests;
2)     whether the information is being sought for a legitimate purpose or for an improper purpose;
3)     whether disclosure of the information will cause a party embarrassment;
4)     whether confidentiality is being sought over information important to public health and safety;
5)     whether the sharing of information among litigants will promote fairness and efficiency;
6)     whether a party benefitting from the order of confidentiality is a public entity or official; and
7)     whether the case involves issues important to the public.

Id.

      As an initial matter, this Court notes that the Pansy factors are neither exhaustive nor

mandatory. Id.  Indeed, "discretion should be left to the court to evaluate the competing

considerations in light of the facts of individual cases." Pansy, 23 F.3d at 789.  Thus, the core of

any Pansy analysis is a balancing of the private versus the public interests at stake.  Glenmede,

56 F.3d at 483.  Local Civil Rule 5.3 provides general guidance regarding the standards to be

applied.

      Wal-Mart relies on recent decisions from this District Court to support its position that,

where the motion to seal relates to discovery motions and documents related thereto, no such

presumptive right to public access exists.  See  Securimetrics, Inc. V. Iridian Techs., Inc., No. 03-04394 (RBK), 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006); Faulman v. Sec. Mut. Fin. Life Ins. Co., 04-5083 (AET), 2006 WL 1541059, *1 (D.N.J. Jun. 2, 2006).  This District Court in Securimetrics and Faulman analyzed motions to seal documents attached as exhibits in support of pretrial motions of a nondiscovery nature, citing to the Third Circuit's holding in Leucadia v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 165 (3d Cir. 1993).  See, e.g., Securimetrics, 2006 WL 827889, at *2; Faulman, 2006 WL 1541059, at *1.

In Leucadia, the Third Circuit stated that "the common law of presumptive access to documents filed in court does not extend to material filed with discovery motions. . . ."  998 F.2d at 165.  Yet, the Third Circuit recognized that its statement "may lead the parties to shield from view material which should not be sealed."  Id.  Referring to the public's right to challenge an overly protective sealing order, the Third Circuit emphasized that:

> We must rely in the first instance on the district courts to protect the legitimate public interest in filed materials from overly broad and unjustifiable protective orders agreed to by the parties for their self-interests.

Id. (quoting United States v. Corbitt, 879 F.2d 224, 228 (7th Cir. 1989) ("'[T]he public's right to inspect judicial records may not be evaded by a wholesale sealing of court papers.  Instead, the district court must be sensitive to the rights of the public in determining whether any particular document, or class of documents, is appropriately filed under seal.'")).

Furthermore, whether a presumptive access to materials filed with discovery motions exists, the parties' Discovery Confidentiality Order expressly states that "[t]he Party . . . seeking CONFIDENTIAL treatment shall bear the burden of persuasion on a motion to seal."  See

Discovery Confidentiality Order at ¶ 14.  Accordingly, Wal-Mart bears the burden of persuading this Court that the disputed discovery materials were properly designated as "confidential," and should be sealed from public access.

      B.      <u>Local Civil Rule 5.3(b)</u>

Here, while Wal-Mart filed its instant motion to seal pursuant to subsection (c) of Local Civil Rule 5.3, Plaintiffs appear to be challenging the "confidential" designation of the disputed materials under the parties' Rule 5.3(b) Discovery Confidentiality Order.  (<u>See</u> ¶ 8 of Discovery Confidentiality Order).  Subsection (b) of Rule 5.3 requires that parties, who wish to enter into blanket protective orders to keep discovery materials confidential and make such orders enforceable in the civil action, must submit an agreed upon form of order to the Court.  Any such form of order submitted under subsection (b)(2) must be accompanied by an affidavit or certification from an attorney, describing:

> (a) the nature of the materials to be kept confidential, (b) the legitimate private or public interests which warrant confidentiality and (c) the clearly defined and serious injury that would result should the order not be entered.  The affidavit or attorney certification shall be available for public review.

L.Civ.R. 5.3(b)(2).  As previously noted, a motion to seal under subsection (c)(2) requires that the supporting motion papers address these same three factors in addition to describing "why a less restrictive alternative to the relief sought is not available."  L.Civ.R. 5.3(c)(2).  As Explanatory Note 3 to Local Civil Rule 5.3(b) emphasizes, stipulated protective orders are "intended to be consistent with the suggestion in "<u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 787 n. 17 (3d Cir. 1994), that, on a showing of good cause, protective orders may be entered governing unfiled discovery materials."  Furthermore, "[n]o order entered under this section of

11

the rule can override the provisions of L.Civ.R. 5.3 generally as to public access to filed materials or judicial proceedings."  Explanatory Note 3 to L.Civ.R. 5.3(b)(3).  Finally, this Court may modify a protective order entered under subsection (b) of Rule 5.3 "at any time."  L.Civ.R. 5.3(b)(3).

In light of these provisions, as a preliminary matter, I find that, here, subsections (b) and (c) of Local Civil Rule 5.3 must be read together; otherwise, subsection (b) would be rendered meaningless.  See Leucadia, 998 F.2d at 165; Pansy, 23 F.3d at 789.  Additionally, given the discovery nature of the disputed materials and consistent with the Third Circuit's holdings in Leucadia and Pansy, I find that, while there may be no common law presumptive access to the disputed materials, once Plaintiff challenged the "confidential" designation of the materials under the stipulated Discovery Confidentiality Order, the burden shifted to Wal-Mart to show good cause exists to warrant confidentiality, and thus, the sealing of the disputed documents.

The Court will now consider the 11 documents at issue here against the standards set forth in the Local Rules.

C.    The Nature Of The Materials

This Court first examines the "nature of the materials" sought to be sealed by Wal-Mart. This Court has previously protected materials containing "trade secret[s] or other confidential research, development, or commercial information" to prevent harm to a party's standing in the marketplace.  Fed. R. Civ. P. 26(c)(7).  See, e.g., Mars, Inc. v. JCM American Corp., Civ. No. 05-3165 (RBK), 2007 WL 496816, *2 (D.N.J. Feb. 13, 2007); Faulman, 2006 WL 1541059 at *1.  The Court initially reviews Wal-Mart's internal cost analysis of floor maintenance contracts by store and within regional divisions as compared with the cost of in-house cleaning services

12

("Wal-Mart's internal cost analysis"), which was attached as Exhibit J to Plaintiffs' October 27, 2006, letter-brief.  A review of Wal-Mart's internal cost analysis confirms that it contains confidential business strategies relating to Wal-Mart's own cost analyses, which compared the financial burden associated with hiring outside contractors to perform janitorial services as compared with having the work performed on an in-house basis.

A similar conclusion cannot be reached with respect to the remaining documents Wal-Mart has sought to be sealed.  The following documents were attached to Plaintiffs' October 27, 2006, letter-brief: (1) a July 16, 2002, email from a Wal-Mart vendor to Wal-Mart's Divisional Vice-President regarding an alleged outstanding payment by Wal-Mart for floor cleaning services (Appendix D to Exhibits E and F); (2) an August 6, 2002, email to all "Div B Store Managers with Outside Floor Maintenance Contractors," announcing Wal-Mart's decision to bring all janitors in-house by September 30, 2002 (Exhibit G); (3) a report in the form of a spreadsheet, outlining payments Wal-Mart owed vendors for cleaning services performed during April 2003, May 2003, and November 2004 (Exhibit H);  (4) an undated chart outlining a store-by-store review of cleaning contracts with Southern Cleaning Services (Exhibit I); and (5)  an undated sample survey for Wal-Mart store managers regarding individual store cleaning contracts (Exhibit K).

Exhibits 2, 3, and 4, attached to Wal-Mart's November 8, 2006, consolidated reply, consist of invoices from Bright Management, Inc., for services performed from March 2003 through October 2003, and from Alamo Cleaning Services, Inc., for services performed spanning from December 2000 to October 2003.  Exhibit 5 is an undated spreadsheet identifying individual Wal-Mart stores, their size, whether the stores used an outside cleaning contractor, the

cleaning contractor's identifying information, whether a contract existed, and basic contract

terms.  Finally, Exhibit A to Plaintiffs' December 19, 2006, Opposition to Motions to Seal,

consists of undated two pages entitled, "Wal-Mart Restroom Care Toilets and Urinals First,"

which describe techniques and instructions for cleaning and disinfecting toilet bowls, urinals and

"trash" receptacles.

     After careful review of the above-mentioned materials, this Court finds that the

documents do not contain any confidential commercially sensitive information.  As such, the

private nature of the documents does not override the other <u>Pansy</u> factors.  Indeed, all of the

remaining documents, except for the two selected pages from Wal-Mart's Maintenance Manual,

consist of materials related to Wal-Mart's floor maintenance contracts with outside vendors.[4]

While these materials concern Wal-Mart's operations, methods, and pricing history for its past

floor maintenance contracts, on their face, the nature of such documents are not expressly

confidential.  At most, these documents relate to expired contracts between Wal-Mart and its

floor maintenance vendors.  The documents, themselves, do little more than identify individual

Wal-Mart stores and floor cleaning vendors as well as describe payments owed and basic past

contractual terms in the form of invoices, emails, spreadsheets, charts, and sample surveys.

     Furthermore, the two pages referenced from Wal-Mart's Maintenance Manual, <u>see</u>

Exhibit A to Plaintiffs' December 19, 2006, Opposition to Motions to Seal, contains general

instructions concerning proper toilet bowl, urinal, and trash bin cleaning techniques in Wal-Mart

---

[4] <u>See</u> Exhs. E, F, G, H, I, and K attached to Plaintiffs', October 27, 2006, letter-brief; Exhs. 2, 3, 4 and 5 attached to Wal-Mart's November 8, 2006, consolidated reply;  Attachment A to Plaintiffs' December 19, 2006 Opposition to the Motions to Seal; and Exhibits A, B, and C attached to Plaintiffs' Opposition to Wal-Mart's instant motion to seal.

store restrooms.  Wal-Mart argues that such documents reveal non-public sensitive information concerning Wal-Mart's maintenance program and corporate maintenance manual.  This Court disagrees.  Even a cursory review of Exhibit A demonstrates the absence of any confidential or otherwise commercially sensitive nature of the excerpts from Wal-Mart's Maintenance Manual.

      D.      The Legitimate Private Or Public Interests Which Warrant The Relief Sought

The Court next considers the private and/or public interests that allegedly warrant the sealing of the disputed materials.  Given the nature of Wal-Mart's internal cost analysis (Exhibit J), which examines Wal-Mart's in-house maintenance costs relative to its external costs, this Court finds that Wal-Mart possesses a legitimate privacy interest in protecting its analysis designed to reduce costs by performing cleaning services in-house, considering the labor, supply and equipment costs.

The remaining materials, the nature of which have been described above, do not fall in that category.  They simply do not contain confidential information relating to Wal-Mart's current pricing strategies, business  plans, or operations that if disclosed, would potentially compromise Wal-Mart's ability to remain competitive in the industry.  Contrast Mars, Inc., 2007 WL 496816, *2; Faulman, 2006 WL 1541059, *1.  As the Eng Declaration acknowledges, these disputed materials describe Wal-Mart's "historical pricing structure" and contain information about Wal-Mart's "past contractual relationships."  See Eng Declaration at ¶¶ 9, 11.  These materials are more than three years old and relate to a commercial practice  – the use of outside maintenance contractors – which Wal-Mart no longer employs.[5]  As to the two excerpted pages

---

     [5] See Exhs. E, F, G, H, I, and K attached to Plaintiffs', October 27, 2006, letter-brief; Exhs. 2, 3, 4 and 5 attached to Wal-Mart's November 8, 2006, consolidated reply.

from Wal-Mart's Maintenance Manual, this document relates to proper restroom cleaning techniques, which demonstrates a lack of any legitimate privacy interest in sealing such information.

Additionally, this case is a collective action certified under 29 U.S.C. § 216(b).  Under the Discovery Confidentiality Order, class members who are not named plaintiffs, and, thus, not defined as a party, do not have access to documents filed under seal.  See Confidentiality Order at ¶¶ 1, 4.  As such, these class members have a strong public interest in having access to documents relevant to their claims.  See In re Cendant Corp., 260 F.3d at 193 (holding attorney bids for lead counsel position in class action should not be sealed and that "[t]he right of public access is particularly compelling here, because many members of the 'public' are also plaintiffs in the class action.").

As a result, protecting any legitimate privacy interests advanced by Wal-Mart does not outweigh an identifiable public interest in disclosing such commercially nonsensitive information.  Accordingly, this Court finds that Wal-Mart does not possess a legitimate privacy interest which warrants confidentiality of the documents sought to be sealed with one exception. As previously noted, Wal-Mart's internal cost analysis (Exhibit J) reveals the corporation's strategies for evaluating the cost of hiring outside vendors for cleaning Wal-Mart stores as compared with bringing the service in-house.  Therefore, Wal-Mart's legitimate interest in maintaining the privacy of its own cost analysis document outweighs the public's interest in having access to a document properly designated as confidential under the parties' Discovery Confidentiality Order.

E.      The Clearly Defined And Serious Injury That Would Result If
             The Relief Sought Is Not Granted

Next, the Court addresses whether Wal-Mart has established a clearly defined and serious

injury that would result if the disputed materials are not sealed.  This Court finds that Wal-Mart

has established such an injury if Wal-Mart's internal cost analysis (Exhibit J) is not sealed.

Should the public be given access to this document, Wal-Mart's competitors most likely would

gain insight into Wal-Mart's general methods, analyses, and business strategies concerning its

cost evaluations, beyond those associated with floor maintenance services.

However, this Court concludes that Wal-Mart has failed to establish any clearly defined

and serious harm that would result if the remaining materials are not sealed.  As previously

noted, these materials consisting of emails, spreadsheets, charts, invoices, and sample surveys,

are beyond three years old and relate to the use of outside maintenance contractors – a

commercial practice which Wal-Mart has since abandoned.  As contained in the Eng Declaration,

Wal-Mart's reference to the materials describing"historical pricing structure" and revealing

information about Wal-Mart's "past contractual relationships," Eng Dec. at ¶¶ 9, 11, negates any

evidence of a present, let alone clearly defined, injury that would result should the documents be

disclosed.  Indeed, Wal-Mart's admission that it no longer employs outside contractors

demonstrates the lack of any confidential nature of the disputed materials.

Furthermore, the materials date back to more than three years ago, supporting the stale

nature of these documents.  Accordingly, release of such stale information is unlikely to harm

any "future negotiations" between Wal-Mart and third-party contractors or give Wal-Mart

competitors a future competitive advantage in hiring third-party contractors.  See Faulman, 2006

17

WL 1541059, at *3 (motion to seal information, more than ten years old, denied).  In short, with the exception of Wal-Mart's internal cost analysis (Exhibit J), Wal-Mart's broad allegations of harm relating to competitive standing in the operation of the general marketplace fall short of showing a clearly defined and serious injury that will result should this Court not seal the remaining materials.  See Simon v. KPMG LLP, No. 05-3189 (DMC), 2006 WL 469956, at * 2 (D.N.J. Feb. 27, 2006).

F.    Why A Less Restrictive Alternative To The Relief Sought
      Is Not Available

Lastly, this Court considers whether a less restrictive alternative to sealing the one disputed document, Wal-Mart's internal cost analysis (Exhibit J), is available.  Of all the disputed materials, Wal-Mart's internal cost analysis is the only document which the Court will seal.  The Court has reviewed the document in camera.  Since the entire document contains the cost analysis, redaction would render the document meaningless.  Therefore, redaction is not appropriate here.  Since the Court finds that the remaining documents are not subject to sealing, the Court does not reach the issue as to whether a less restrictive alternative is available as to them.

IV.    Conclusion

The Court has reviewed the following groups of documents: (1) Exhibits E, F, G, H, I, J, and K attached to Plaintiffs', October 27, 2006, letter-brief; (2) Exhibits 2, 3, 4 and 5 attached to Wal-Mart's November 8, 2006, consolidated reply; (3) Attachment A to Plaintiffs' December 19, 2006 Opposition to the Motions to Seal; and (4) Exhibits A, B, and C attached to Plaintiffs' Opposition to Wal-Mart's instant motion to seal.  The Court finds that, because Wal-Mart's

interests in maintaining the confidentiality of its own internal cost analysis (Exhibit J attached to Plaintiffs' October 27, 2006, letter-brief), that if disclosed may divulge confidential business and commercially sensitive information, outweighs any concern over public access to those records and the public-at-large will suffer no adverse effect from a lack of access, Wal-Mart has met the standards set forth in Local Civil Rule 5.3 (b)(2) and (c)(2).  However, this Court further finds that any legitimate privacy interest advanced by Wal-Mart in maintaining the confidentiality of documents relating to its historical pricing structure, past contractual relationships, and general instructions concerning proper lavatory and trash bin cleaning techniques is outweighed by the public's right to access those records, and Wal-Mart will suffer no clearly defined or serious harm in the present or future should the public be afforded access to same.  Accordingly, Wal-Mart has failed to satisfy the standard set forth in subsections (b)(2) and (c)(2) of Local Civil Rule 5.3 concerning all the disputed materials except Exhibit J to Plaintiffs' October 27, 2006, letter-brief.

Accordingly, for the foregoing reasons, and for good cause shown,

IT IS on this 12th day of September 2007,

**ORDERED** that Defendant Wal-Mart's Motion for an Order to Seal Materials is **DENIED IN PART AND GRANTED IN PART,** pursuant to L. Civ. R. 5.3 (b)(2) or (c); and it is further

**ORDERED** that Defendant Wal-Mart's internal cost analysis (Exhibit J attached to Plaintiffs' October 27, 2006, letter-brief), shall be sealed; and it is further

**ORDERED** that Exhibits E, F, G, H, I, and K attached to Plaintiffs', October 27, 2006, letter-brief; Exhibits 2, 3, 4 and 5 attached to Wal-Mart's November 8, 2006, consolidated reply;

Attachment A to Plaintiffs' December 19, 2006 Opposition to the Motions to Seal; and Exhibits

A, B, and C attached to Plaintiffs' Opposition to Wal-Mart's instant motion to seal shall be filed

unsealed.

> _s/Madeline Cox Arleo_
> **MADELINE COX ARLEO**
> **United States Magistrate Judge**