**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————— :
                                                      :
VICTOR ZAVALA, EUNICE GOMEZ,      :
ANTONIO FLORES, OCTAVIO               :
DENISIO, HIPOLITO PALACIOS,            :          Civil Action No. 03-5309 (JAG)
CARLOS ALBERTO TELLO,                   :
MAXIMILIANO MENDEZ, ARTURO       :
ZAVALA, FILIPE CONDADO, LUIS         :          **OPINION**
GUTIERREZ, DANIEL ANTONIO          :
CRUS, PETR ZEDNEK, TERESA             :
JAROS, JURI PFAUSER, HANA               :
PFAUSEROVA, PAVEL KUNC and          :
MARTIN MACAK, on behalf of                :
themselves and all others similarly          :
situated,                                                   :
                                                      :
          Plaintiffs,                                   :
                                                      :
          v.                                               :
                                                      :
WAL-MART STORES, INC.,                      :
                                                      :
          Defendant.                                  :
————————————————————:


**GREENAWAY, JR., U.S.D.J.**

This action involves a wage and hour dispute filed by plaintiffs Victor Zavala, Eunice

Zavala, Antonio Flores, Octavio Denisio, Hipolito Palacios, Carlos Alberto Tello, Maximiliano

Mendez, Arturo Zavala, Filipe Condado, Luis Gutierrez, Daniel Antonio Crus, Petr Zednek,

Teresa Jaros, Juri Pfauser, Hana Pfauserova, Pavel Kunc, and Martin Macak (collectively, the

"Plaintiffs") against defendant Wal-Mart Stores, Inc. ("Defendant") under the Fair Labor

Standards Act (the "FLSA").  The parties submitted briefs, for the purposes of settlement only,

addressing two narrowly-circumscribed sub-issues related to (1) the scope of the collective action, and (2) the proper method for calculating overtime wages allegedly owed to claimants. The parties have requested a judicial declaration from this Court settling the aforementioned legal questions.

## I. **DISCUSSION**[1]

### A.   **Scope of the Collective Action**

The first question the parties ask this Court to resolve is whether the individuals who failed to submit responses to the FLSA questionnaire negotiated by the parties and ordered by this Court (the "Second Questionnaire") should be excluded from the collective action.

A plaintiff may initiate an action alleging violation of the FLSA "against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (applying § 216(b) to plaintiff's ADEA claim, as incorporated by 29 U.S.C. § 626(b)). Courts are permitted, at their discretion, to intervene in the notice process for case management purposes. Id. at 171, 174.

"In the absence of guidance from the Supreme Court and the Third Circuit, district courts

---

[1] Since Plaintiffs and Defendant are familiar with the operative facts of this case, this Court shall confine its discussion to the legal issues necessary for disposition, as well as those facts relevant to their resolution.

have developed a two-tiered test to determine whether FLSA claimants are 'similarly situated' for the purposes of § 216(b)." Id.  At the first step, coined the conditional certification stage, courts conditionally grant certification for the purpose of notice and discovery only.  Id. "[C]ourts employ a lenient standard when determining if a potential class is similarly situated and should be noticed, and do not impose the stricter standard to certify a class prior to trial." Herring v. Hewitt Assoc., Inc., No. 06-267, 2007 WL 2121693, at *6 (D.N.J. July 24, 2007). This step is performed at the initial stage of the litigation process, when there exists minimal evidence for the court to examine.  Bosley v. Chubb Corp., No. 04-4598, 2005 WL 1334565, at *2 (E.D. Pa. June 3, 2005).

At the final certification stage, after the completion of class-related discovery, "the [c]ourt makes a decision on final certification based upon a 'specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party.  Plaintiffs bear the burden of showing they are similarly situated to the proposed class.'" Stillman v. Staples, Inc., No. 07-849, 2008 WL 1843998, at *3 n.15 (D.N.J. Apr. 22, 2008) (citing Bosley, 2005 WL 1334565, at *2; Herring, 2007 WL 2121693, at *3).  The court, applying a stricter standard, should examine the full factual record against various factors, including the "disparate factual and employment settings of the individuals [sic] plaintiffs, the various defenses available to defendants, and fairness and procedural considerations."  Id. (citing Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987)).  Specifically, courts examine the employees' duties, responsibilities, salary, and time spent performing administrative tasks.  Id.  "To succeed in obtaining final certification, the plaintiff must make a showing that the nature of the work performed by other claimants is at least similar to [their] own."  Id.

In an Order dated December 29, 2004, this Court granted conditional certification of this case as a collective action, pursuant to 29 U.S.C. § 216(b), for the purposes of notice and discovery.  (Docket Entry No. 41.)  During the discovery stage, Magistrate Judge Arleo issued an Order dated January 30, 2006 directing "Wal-Mart and plaintiffs [to] discuss and agree upon information to be provided for each named Plaintiff and all individuals who have filed Notices and Filing of Consent [p]ursuant to 29 U.S.C. § 216(b)."  (Docket Entry No. 97.)  After the parties agreed on the format and content of the Second Questionnaire, Magistrate Judge Arleo ordered, on April 4, 2007, that "Plaintiffs shall produce completed FLSA questionnaires for each claimant who intends to pursue claims."  (Docket Entry No. 153.)  Magistrate Judge Arleo also stated, in an Order dated May 14, 2007, that fact discovery shall close on October 1, 2007. (Docket Entry No. 159.)

Going forward, Plaintiffs will seek final certification of this action.  In the brief submitted for settlement purposes, Plaintiffs state that, of the 215 people who opted into this action,[2] 207 are similarly situated to the Plaintiffs because they "have provided enough information to indicate that they were contract janitors who worked at one or more Wal-Mart locations at some time between January 2000 and the present."  (Pl. Br. 3-4.)  Although only 118 people submitted the Second Questionnaire, Plaintiff submits that this Court can also look to information provided by those who completed a different questionnaire available on Cohen Weiss' website, which was created for the purpose of screening potential claimants for the case (the "Original

---

[2]  According to Plaintiff, 214 individuals executed consents to opt into this action, and one person opted into this action by appearing for a deposition.

4

Questionnaire").[3]  (Pl. Br. 4; Def. Opp. Br. 2.)

Defendant, however, has expressed its intention to file a motion to de-certify this case as a collective action.  Defendant supports this position in part by arguing argues that only 114 of the individuals who provided responses to the Second Questionnaire should be taken into consideration when determining which claimants are "similarly situated" to Plaintiffs, and that the remaining individuals who opted into this action should be dismissed from the case.[4]  (Def. Br. 1-2.)

To support this argument, Defendant emphasizes the Order by Magistrate Judge Arleo requiring Plaintiffs to "produce completed FLSA questionnaires for each claimant who intends to pursue claims[.]" (Order dated April 4, 2007.)  Defendant notes that the Original Questionnaire "cannot substitute for the Court-ordered discovery that [P]laintiffs themselves requested," that is, the Second Questionnaire, for three reasons.  First, the Original Questionnaire was "unilaterally controlled by Plaintiffs' counsel, calling into question the accuracy and veracity of any wage claims generated or transmitted by this medium."  (Def. Br. 6.)  Indeed, this Court required Plaintiffs to include disclaimers on the Original Questionnaire indicating that the Court had not authorized or approved of the website.  Second, the Original Questionnaire is "unsigned,

---

[3]  Plaintiff notes that "[a] number of claimants completed both questionnaires."  (Pl. Br. 4.)

[4]  Defendant also presents two arguments supporting dismissal of four of the 118 individuals that completed the Second Questionnaire.  First, in an Order dated May 4, 2007, Magistrate Judge Arleo expressly excluded from this case one individual, Valeriy Kozlov, who later submitted the Second Questionnaire.  (Docket Entry No. 158.)  Second, Defendant states that the partial responses to the Second Questionnaire that were submitted by three individuals were first provided to Defendant in June of 2008, more than eight months after the close of discovery.  (Id.)

unsworn, and unverified."[5]  (Id.)  Third, many of the Original Questionnaires contain content that

is vague and/or conflicts with information provided by the same individuals in the Second

Questionnaire.  (Id. at 7.)

      If considering the parties' arguments on a motion to de-certify the class, pursuant to 29

U.S.C. § 216(b), this Court should not consider those individuals who only completed the

Original Questionnaires.  This would limit the potential claimants to the 114 individuals that

completed the Second Questionnaire, whose responses were produced to Defendant by Plaintiffs

in a timely fashion.  Plaintiffs argue that striking the potential claimants from participating in this

action would be an overly extreme punishment for their failure not to adhere to this Court's order

to complete the Second Questionnaire.  However, in an Order dated April 4, 2007, Magistrate

Judge Arleo directed Plaintiffs to "produce completed FLSA questionnaires for each claimant

who intends to pursue claims[.]" (Docket Entry No. 153.)  To permit potential claimants to

pursue claims without completing the Second Questionnaire would be contrary to Magistrate

Judge Arleo's directive.  The April 4, 2007 Order constitutes an exercise of this Court's

discretionary authority to "manage the process of joining multiple parties in a manner that is

orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the

Federal Rules of Civil Procedure."  The potential claimants that did not comply with this Court's

case management orders, therefore, should not be permitted to join in this action.[6]

---

[5] In their reply brief, Plaintiffs counter that the Second Questionnaire is also unverified,
as it is not signed by a notary public.  (Pl. Reply Br. 7.)

[6] As Defendant aptly points out, FED. R. CIV. P. 16(f)(1)(C) provides that, "[o]n motion
or on its own the court may issue any just orders, including those authorized by Rule
37(b)(2)(A)(ii) -(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial
order."  FED. R. CIV. P. 37(b)(2)(A)(v) states that, if a party "fails to obey an order to provide or

The incomplete information provided in a number of the Original Questionnaires only further discredits the use of the Original Questionnaires to determine whether potential claimants are in fact "similarly situated" to Plaintiffs.  Many of the responses to the Original Questionnaires fail to include dates of employment, hours worked, wages earned, or the identity of the store.[7] (Def. Br. 6.)  A number of the Original Questionnaires include responses that were not translated into English, despite Magistrate Judge Arleo's Order requiring "core information" to be translated into English.  (See id. at 6; Order dated April 4, 2007.)  Although Plaintiffs point out that some of the Second Questionnaires likewise are incomplete and are untranslated, this argument should not encourage this Court to look to the Original Questionnaires at the final certification stage; to the contrary, it dissuades this Court from relying on those Second Questionnaire responses that are incomplete and untranslated as well.

This Court cannot determine at this juncture in the litigation which potential claimants are similarly situated to Plaintiffs without reviewing the responses to the Second Questionnaires, and such material has not been provided in toto to this Court at this time.  However, this Court should

---

permit discovery, . . . " the court may issue a just order, including "dismissing the action or proceeding in whole or in part[.]"

[7] For example, the Original Questionnaires do not clearly set forth whether the potential claimant worked at a Wal-Mart store or a Sam's Club store; this information is integral to determining whether a potential claimant is "similarly situated" to Plaintiffs, as this Court ordered the exclusion of Sam's Club employees from this action.  (See Letter from David Murray to James Linsey dated May 29, 2008, attached as Ex. 16 to Def. Br.; Order dated Dec. 29, 2004.)  Plaintiffs counters that this Court can assume from the responses to the Original Questionnaires that some of the potential claimants worked at Wal-Mart stores, rather than Sam's Club stores, because the cities in which they claim to have worked do not have Sam's Club stores.  However, Plaintiffs cannot meet the stricter standard applied at the final certification stage by asking this Court to make assumptions regarding key information related to whether potential claimants are similarly situated.

not permit Plaintiff to insert claimants into this action based on information provided in a questionnaire that was not authorized by this Court.  When determining which individuals should be included in this action, this Court shall look to the responses to the Second Questionnaire which were provided by the 114 individuals and produced to Defendant in a timely fashion.

**B.**     **Calculation of Overtime Wages**

The second question to be considered by this Court is the proper method for calculating the claimants' "regular rate of pay," pursuant to the FLSA and its applicable regulations.

The FLSA requires employers to provide overtime pay to all eligible employees who work more than forty hours in a workweek, at the rate of time and a half the employee's regular hourly rate of pay.  29 U.S.C. § 207 (West, Westlaw through P.L. 110-320).  "If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113 (West, Westlaw through September 4, 2008).

Plaintiffs' calculation of the regular rate of pay assumes that the parties intended Plaintiffs to work a forty hour workweek.  See Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) ("There is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours."); Chan v. Sung Yue Tung Corp., No. 03-6048, 2007 WL 313483, at *23 (S.D.N.Y. Feb. 1, 2007).  If a claimant received $350 per week, and worked seven days a week, for eight hours a day, Plaintiff would calculate that claimant's regular rate of pay as $350 divided by forty, which equals $8.75 per hour.  According to Plaintiffs, that claimant's overtime calculation for a 56-hour workweek would be as follows:

$$(\$8.75 * 40) + (\$13.13 * 16) = \$560.08.$$

In contrast, Defendant uses the responses to the Second Questionnaires to determine the number of hours that each claimant was intended to work. For example, if a claimant stated on the Second Questionnaire that he received $350 in pay each week, and was expected to work seven days a week, for eight hours a day, then, according to Defendant, the parties intended that claimant to work fifty-six hours per week. His regular rate of pay, then, would amount to 350 divided by fifty-six, or $6.25 per hour. If that employee in fact worked 56 hours during a workweek, Defendant states, his overtime calculation would be as follows:

$$(\$6.25 * 40) + (\$9.38 * 16) = \$400.08.$$

Defendant expressly states that it is not asking this Court to apply the fluctuating workweek method.[8] (Def. Br. 12 n.3.) Presumably, then, if the aforementioned employee worked 60 hours during one work week, his overtime calculation, according to Defendant, would be as follows:

$$(\$6.25 \times 40) + (\$9.38 \times 20) = \$437.60.$$

The key issue to resolve, therefore, is how to compute a claimant's regular rate of pay. The answer to this question rests entirely on how to determine the number of hours that a claimant's salary is intended to compensate. "[W]here the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate-not necessarily the number of hours he actually works-is the divisor." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268-69 (11th Cir. 2008) ("If an employee is hired at a salary of $182.70 and if it

---

[8] The fluctuating workweek method, enunciated in 29 C.F.R. 778.114, "applies only if there is "a clear mutual understanding of the parties" that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week." Clements v. Serco, Inc., 530 F.3d 1224, 1230 (10th Cir. 2008).

is understood that this salary is compensation for a regular workweek of thirty-five hours, the employee's regular rate of pay is $182.70 divided by thirty-five hours, or $5.22 an hour, and when he works overtime he is entitled to receive $5.22 for each of the first forty hours and $7.83 (one and one-half times $5.22) for each hour thereafter."). "Importantly, the 'number of hours which the salary is intended to compensate' does not have to be forty hours; instead, this is a number that is determined by the parties' actual practice." Sharpe v. Cureton, 319 F.3d 259 (6th Cir. 2003).

To determine the number of hours for which each claimant's salary was intended to compensate, Plaintiffs urge this Court to assume that the parties intended the weekly salary to compensate a 40-hour workweek. In contrast, Defendants ask this Court to rely on the assertions made by the claimants in their respective responses to Second Questionnaire. Defendants believe if these responses are used, two conclusions will arise -- 1) there is no consensus among the purported class members regarding a workweek; and 2) the evidence would reflect anything but an agreed forty-hour workweek.

This Court declines to state conclusively whether it adopts or rejects the "rebuttable presumption" doctrine articulated by the District Courts for the Southern District of New York. It finds, however, that the evidence cited by Defendants in the Second Questionnaire is sufficient to rebut the "rebuttable presumption" that claimants worked a forty-hour workweek. Without setting forth evidence supporting this assertion, this Court shall not adopt Plaintiffs' interpretation at this time. Unless Plaintiff can present evidence showing that the parties understood the weekly salary to cover only 40 hours, this Court will only consider the responses to the Second Questionnaire to determine the number of hours which the salary was intended to

compensate.

## II.  <u>CONCLUSION</u>

For the reasons set forth above, this Court finds that only those claimants who completed the Second Questionnaire may be taken into account when determining final certification of this action.  With respect to the calculation of the claimants' regular rate of pay, this Court concludes that the information provided on the Second Questionnaire rebuts the "rebuttable presumption" that an employee's salary was intended to compensate for a forty-hour workweek.  Plaintiff therefore may not rely solely on the rebuttable presumption, but instead must present evidence, at the appropriate time, supporting its assertion that the parties intended claimants to work forty hours per week.


 S/Joseph A. Greenaway, Jr._____
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: September 25, 2008

11