NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTOR ZAVALA, EUNICE GOMEZ, ANTONIO FLORES, OCTAVIO DENISIO, HIPOLITO PALACIOS, CARLOS ALBERTO TELLO, MAXIMILIANO MENDEZ, ARTURO ZAVALA, FILIPE CONDADO, LUIS GUTIERREZ, DANIEL ANTONIO CRUS, PETR ZEDNEK, TERESA JAROS, JURI PFAUSER, HANA PFAUSEROVA, PAVEL KUNC, and MARTIN MACAK, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | Hon. Garrett E. Brown, Jr. <br><br> Civil Action No. 03-5309 (GEB) <br><br> **MEMORANDUM OPINION** |

**BROWN**, Chief Judge:

This matter comes before the Court on Plaintiffs' motion for class certification (Doc. No. 200) and Defendant's cross-motion for decertification (Doc. No. 209). For the following reasons, the Court will deny Plaintiffs' motion for class certification and grant Defendant's motion for decertification.

**I. BACKGROUND**

This action involves a wage and hour dispute filed by Plaintiffs Victor Zavala, Eunice Zavala, Antonio Flores, Octavio Denisio, Hipolito Palacios, Carlos Alberto Tello, Maximiliano Mendez, Arturo Zavala, Filipe Condado, Luis Gutierrez, Daniel Antonio Crus, Petr Zednek,

1

Teresa Jaros, Juri Pfauser, Hana Pfauserova, Pavel Kunc, and Martin Macak against Defendant Wal-Mart Stores, Inc. under the Fair Labor Standards Act (FLSA).  On December 29, 2004, then District and now Circuit Judge Joseph A. Greenaway, Jr., conditionally certified this action as a collective action under the FLSA, 29 U.S.C. § 216(b), allowing all undocumented or recently documented immigrants who were at any time since January 2000 employed as contract janitors to clean Wal-Mart stores across the United States to opt-in to the action.  (Doc. No. 41.)  Thereafter, over 200 such persons opted into the action.

During the discovery stage, Magistrate Judge Madeline Cox Arleo issued an Order directing that Plaintiffs and Defendant agree upon information to be provided by named Plaintiffs and those individuals who filed notices opting into the action.  (Doc. No. 97.)  The parties thereafter agreed on the format and content of a questionnaire, which Plaintiffs were required to produce for each claimant who intended to pursue claims.  (Doc. No. 153.)  Of those who opted into the action, only 114 fully completed the questionnaire, and on September 5, 2008, Judge Greenaway held that only those 114 claimants could be taken into account when determining final certification.  (Doc. No. 191.)

On November 13, 2009, Plaintiffs filed the instant motion for final certification of the conditional class.  On December 14, 2009, Defendant filed the instant cross-motion to decertify the conditional class.[1]

## II.  DISCUSSION

The FLSA requires that employers pay employees covered by the FLSA a specified minimum wage and overtime hours worked in excess of forty hours per week.  29 U.S.C. §§ 206,

---

[1] By Order of March 10, 2010, this matter was reassigned to the undersigned.

207; *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 495 (D.N.J. 2000). When an employer fails to comply with the requirements of the FLSA, employees can pursue an action against an employer in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). This type of action is known as a "collective action," and "allows potential class members who are similarly situated to the named plaintiffs to file a written consent with the court to opt in to the case." *Morisky*, 111 F. Supp. 2d at 496. Section 216(b) of the FLSA provides, in relevant part, that:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, for an action to proceed as a collective action, § 216(b) sets two basic requirements: (1) class members must be "similarly situated" and (2) members must affirmatively consent to join the action. *Id*

Although the FLSA does not provide a definition for the term "similarly situated," in determining whether to allow certification under the FLSA, courts have generally recognized the two-stage approach set forth set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Morisky*, 111 F. Supp. 2d at 497. The first stage in this test, commonly referred to as the notice stage, occurs early in the litigation process, when the court has minimal evidence. *Id.* This stage is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly situated employees. At this stage, the court grants only conditional certification of the class for the purposes of notice and discovery, and this is done under a comparatively liberal

standard. *Id.* Because at this first stage the court "usually has only minimal evidence before it," the "determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (quoting *Thiessen v. General Electric Capital Corp.*, 996 F. Supp. 1071, 1080 (D. Kan. 1998)). Some courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan [in violation of law]." *Id.*; *see also Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988).

At the second stage, the court "makes a second determination after discovery is largely complete and the case is ready for trial." *Morisky*, 111 F. Supp. 2d at 497 (quoting *Thiessen*, 996 F. Supp. at 1080). During this stage of the analysis, sometimes referred to as the "decertification stage," the court determines whether the plaintiffs are "similarly situated," employing a stricter standard as there is much more information on which to base its decision. *Id.*; *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010). "Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class," *Morisky*, at 496, and in order to determine whether plaintiffs have met that burden, the court examines various factors, including "disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendants, and fairness and procedural considerations," *Lusardi*, 118 F.R.D. at 359. If the court concludes that plaintiffs are similarly situated, the case proceeds to trial as a collective action; however, if plaintiffs fail to meet their burden, the court decertifies the conditional class. *Morisky*, 111 F. Supp. 2d at 497; *Lusardi*, 118 F.R.D. at 352.

This case is currently at the second stage of the two-stage certification approach of *Lusardi*. Although Plaintiffs repeatedly urge that this Court's focus should be on the "leniency"

of class certification under the FLSA, that more lenient standard applies only at the first stage with regard to "conditional certification." Here, at the second stage, the Court must employ a stricter standard to determine whether Plaintiffs are similarly situated. *See Morisky,* 111 F. Supp. 2d at 497.

First, with regard to disparate factual and employment settings of the individual plaintiffs, Plaintiffs focus almost entirely on the similar job duties of the workers at Defendant's stores. However, similar job duties alone do not necessarily establish that Plaintiffs are similarly situated because "the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citation omitted) (affirming district court's decertification of conditional class). If those facts alone were sufficient "'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Id.* (citation omitted). Other relevant factors regarding the factual and employment settings of plaintiffs include geographic location, supervision at each location, and salaries of individual plaintiffs. *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000) (citing *Thiessen*, 996 F. Supp. at 1081; *Lusardi*, 118 F.R.D. at 358-59). Further considerations include the "varied compensation structures affecting the purported class" and the employer's independent locations and work forces. *Anderson*, 488 F.3d at 952. Allegations of overarching policies are generally insufficient to establish that individual workers are similarly situated. *Moss*, 201 F.R.D. at 409.

In this case, there are significant differences in the factual and employment settings of the individual claimants. Defendant did not directly employ the individual janitors who cleaned and

maintained Defendant's stores; rather, Defendant's stores entered into contracts with various private contractors that provide janitorial services throughout the United States. (Walters Decl. ¶¶ 4-6.) Those contractors then hired the janitors to perform the cleaning services or subcontracted the work out to other companies that would handle the hiring, supervision, and compensation of the workers. (*Id.* ¶ 19.) In all, the putative class members worked in 180 different stores in 33 states throughout the country and for 70 different contractors and subcontractors. (Linsey Decl., Ex. A.) The individuals worked varying hours and for different wages depending on the contractor. (*Id.*; *see e.g.,* Linsey Decl., Ex. B at 2390 ($5.15 per hour), 1059 ($50 per night), 1298-1299 ($500 per week)). The compensation structure for each individual also varied depending on the contractor or subcontractor at a particular location: some were paid weekly (Linsey Decl., Ex. B at 1333, 1367), some were paid monthly (*id.* at 1516), some were paid bonuses (*id.* at 2424), some alleged they received no compensation at all for particular periods (*id.* at 410, 1327, 2102), some claim that taxes were withheld (*id.* at 1553), and some allege that they were required to pay deposits to contractors (*id.* at 1006, 1018, 1171, 1567, 1821). Moreover, some of the individuals worked not only at Defendant's stores, but also other stores while working for the same contractors. (*Id.* at 522-523, 595, 1902, 1924.) These facts demonstrate significant differences in the employment settings of each of the individual claimants in this case, and strongly undermine Plaintiffs' contention that they are similarly situated.

     Second, the various defenses available to an employer under the FLSA is an important consideration in determining whether individual claimants are similarly situated "because individualized defenses prevent an efficient proceeding with a representative class." *Moss*, 210

F.R.D. at 410; *see also Thiessen*, 996 F. Supp. at 1083; *Lusardi*, 118 F.R.D. at 370.  It is left to the district court's discretion as to "whether the potential defenses would make the class unmanageable."  *Moss*, 201 F.R.D. at 410 (citing *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 52 (3d Cir. 1989)).

One such defense raised by Defendant is the determination of whether the individual claimants were considered employees under the FLSA.  The FLSA defines an employee broadly as "any individual employed by an employer."  *See* 29 U.S.C. § 203(e)(1); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).  "[T]he determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'"  *Martin*, 949 F.2d at 1293 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).  The Third Circuit, however, has set forth several factors to be considered in determining whether an individual is an employee:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.*  "[N]either the presence nor the absence of any particular factor is dispositive"; rather, these criteria simply assist courts in determining whether an employment relationship exists under the FLSA.  *Id.*

These factors are relevant at this juncture, not to make an immediate determination as to whether the individual workers were in fact employees of Defendant, but rather to examine the

7

factual considerations regarding the defenses available to Defendant with respect to the individual claimants. *See Bayles v. American Medical Response*, 950 F. Supp. 1053, 1067 (D. Colo. 1996) (decertifying class where case was "fraught with questions requiring distinct proof as to individual plaintiffs" and defenses could not "be addressed on a class-wide basis"). With regard to the control factor, "evidence relevant to evaluate this factor includes the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." *Bamgbose*, 684 F. Supp. 2d at 669 (denying class certification where healthcare workers had varying degrees of ability to negotiate schedule and pay with clients directly, and not with the defendant). Also, the factor relating to profit or loss may focus on a worker's ability to negotiate pay or the ability to manage and hire. *Id.*

In this case, the workers often had varying schedules depending on the particular contractor for which they were working. (Linsey Decl., Ex. A). Moreover, decisions on whether to hire and fire workers were made by the individual contractors and not by Defendant. (Walters Decl. ¶19.) The differences in the length of time the various workers worked for the contractors at Defendant's stores also suggests a varying degree of permanence in the working relationship. (*See* Linsey Decl., Ex. B at 1385, 1646, 2132, 2295.) Although Defendant had guidelines for how its stores were to be maintained, that does not establish that Defendant had the degree of supervision and control over every worker such that all workers, no matter what contractor they worked for or at what store, can be said to be an employee of Defendant for purposes of the FLSA. Whether the individual claimants were employees of Defendant within the meaning of the FLSA depends on the individual facts and circumstances relating to the various contractors and the activities at each separate store location.

Additionally, Defendant also argues that the amounts that it paid to the contractors at its individual store locations were adequate for the contractors to comply with minimum wage regulations for the individual workers. Thus, Defendant will likely have individualized defenses based on the different agreements made with the contractors at each of its store locations and the amount of compensation provided to those contractors. Those individual agreements and the levels of compensation paid to the contractors, as well as the *Martin* factors concerning whether the claimants were employees for purposes of the FLSA, present defenses that will be individual to the various claimants depending on the particular stores at which they worked and the particular contractors who hired them. Those factors weigh against Plaintiffs' assertions that they satisfy the "similarly situated" standard required to maintain a manageable collective action.

Finally, with regard to the fairness and procedural considerations, the Court recognizes the general benefits of a § 216(b) collective action in lowering costs to plaintiffs and limiting the controversy to one proceeding. *See generally Hoffman La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). However, this Court must also consider the manageability of the class and the fairness to the Defendant. Due to the numerous different store locations at issue in this case and the numerous contractors utilized at the different locations throughout the country, as well as the disparities between the employment conditions and practices of those contractors, this Court concludes that the fairness and procedural considerations weigh against a collective action.

This Court concludes that Plaintiffs have failed to satisfy their burden to establish that they are similarly situated to the remainder of the proposed class. There are significant disparities among the factual and employment settings of the individual claimants, as well as differences among claimants and among the contractors that greatly affect the defenses available

9

to Defendant in this case. For those reasons, as well as the fairness and procedural considerations with regard to managing the proposed class, this Court concludes that Plaintiffs are not similarly situated and decertification of the conditional class is warranted.

### III. CONCLUSION

For the foregoing reasons, this Court will deny Plaintiffs' motion for class certification (Doc. No. 200) and grant Defendant's motion for decertification (Doc. No. 209). An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 25, 2010
Newark, New Jersey

                                           S/Garrett E. Brown, Jr.
                                   Garrett E. Brown, Jr., Chief Judge
                                   United States District Court