UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR ZAVALA, EUNICE GOMEZ, ANTONIO FLORES, OCTAVIO DENISIO, HIPOLITO PALACIOS, CARLOS ALBERTO TELLO, MAXIMILIANO MENDEZ, ARTURO ZAVALA, FELIPE CONDADO, LUIS GUTIERREZ, DANIEL ANTONIO CRUZ, PETR ZEDNEK, TERESA JAROS, JIRI PFAUSER, HANA PFAUSEROVA, PAVEL KUNC and MARTIN MACAK, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. 03-CIV-5309 (JAG)<br><br>DOCUMENT ELECTRONICALLY FILED<br><br>**WAL-MART STORES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO ADJOURN TRIAL AND ALLOW TESTIMONY BY VIDEO TRANSMISSION** |
|        Plaintiffs, | |
|    v. | |
| WAL-MART STORES, INC., | |
|        Defendant. | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF ARGUMENT ...........................................................................1

III.  PLAINTIFFS' INABILITY TO APPEAR FOR TRIAL MAKES DISMISSAL
      APPROPRIATE UNDER RULE 41(b) ............................................................3

      A.    The Six *Poulis* Factors Weigh In Favor Of Dismissal............................3

            1.    Plaintiffs Are Personally Responsible For Their Inability To
                  Appear.................................................................................................4

            2.    Plaintiffs' Attempt To Allege New Facts Relating To Their False
                  Imprisonment And Overtime Claims Is Untimely And Prejudicial
                  To Wal-Mart .......................................................................................5

            3.    Plaintiffs Were Dilatory In Pursuing Their Claims ......................6

            4.    Plaintiffs' Conduct Of This Litigation Has Been Vexatious And
                  Already Caused Substantial Unwarranted Delays ......................7

            5.    Alternative Sanctions Would Be Ineffective ................................9

            6.    Plaintiffs' Claims Lack Merit ......................................................10

IV.   PLAINTIFFS' PROPOSED ALTERNATIVES TO INVOLUNTARY
      DISMISSAL ARE NOT JUSTIFIED AND, IF PERMITTED, WOULD BE
      PREJUDICIAL TO WAL-MART ..................................................................11

      A.    Delay Of The Trial Date Would Be Futile And Prejudicial To Wal-Mart............11

      B.    Plaintiffs Have Not Shown Good Cause Or Any "Compelling
            Circumstances" Justifying An Exception To The Requirement Of Live
            Testimony ...................................................................................................11

V.    CONCLUSION...................................................................................................16

## TABLE OF AUTHORITIES

## CASES

*Adam v. Carvalho*, 138 F. App'x 7 (9th Cir. 2005) ................................................14,15

*Adegbuji v. Middlesex County*, 347 F. App'x 877 (3d Cir. 2009) ....................4,6,9,12

*Air Turbine Technology v. Atlas Copco AB*, 217 F.R.D. 545 (S.D. Fla. 2003) ...........13

*Beltran- Tirado v. INS*, 213 F.3d 1179 (9th Cir. 2000) ................................................14

*Dagen v. CFC Group Holdings Ltd.*, No. 00-5682, 2003 WL 22533425
   (S.D.N.Y. Nov. 7, 2003) ......................................................................................15,16

*Edwards v. Logan*, 38 F. Supp. 2d 463 (W.D. Va. 1999) ...........................................16

*El-Hadad v. U.A.E.*, 496 F.3d 658 (D.C. Cir. 2007) ...................................................15

*FTC v. Swedish Match N. Am.*, Inc., 197 F.R.D. 1 (D.D.C. 2000) ..............................16

*Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187 (10th Cir. 2004) ......4,12

*Haimdas v. Haimdas*, No. 09-2034, 2010 WL 2342377 (E.D.N.Y. June 8, 2010) ......15

*Lopez v. NTI, LLC*, No. 08-1579, 2010 WL 3703287 (D. Md. Sept. 16, 2010) ......13,14

*Matovski v. Matovski*, No. 06-4259, 2007 WL 2600862 (S.D.N.Y. Aug. 31, 2007) ...15

*Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992) ...........................................................4

*Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*, 756 F. Supp. 1393
   (D. Or. 1990) ..............................................................................................................15

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) ...........................1,3

*Prideaux v. Tyson Foods, Inc.*, No. 09-60469, 2010 WL 2813813
   (5th Cir. July 19, 2010) ...........................................................................................11,13

*Quality Prefabrication, Inc. v. Danial J. Keating Co.*, 675 F.2d 77 (3d Cir. 1982) .......4

*Sussel v. Wynne*, No. 05-444, 2006 WL 2860664 (D. Haw. Oct. 4, 2006) ..................14

*United States v. Moruzin*, No. 05-306, 2007 WL 2914903 (D.N.J. Oct. 1, 2007) ........14

*In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640 (E.D. La. 2006) .........................15

*Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005) .........................10

## RULES

Fed. R. Civ. P. 43 1996 advisory committee notes...................................................................3,11

## I.    INTRODUCTION

The Court ordered plaintiffs Teresa Jaros and Petr Zednik (hereinafter, "plaintiffs") to show cause why their overtime and false imprisonment claims should not be involuntarily dismissed "due to their immigration status and resulting inability to appear for trial, pursuant to Federal Rule of Civil Procedure 41(b), and based on the factors enunciated by the Third Circuit in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984)."[1]  In response, plaintiffs have asked the Court to adjourn the November 29, 2010 trial date, pending a ruling on plaintiffs' untimely motion for summary judgment,[2] pending plaintiffs' last-minute attempt to re-enter the United States, and alternatively to permit them to present trial testimony by videoconference.

## II.    SUMMARY OF ARGUMENT

Plaintiffs have declined offers of settlement from Wal-Mart and opted instead to continue to pursue (1) wage claims based on overtime pay calculations that the Court has already largely rejected; and (2) "false imprisonment" claims that are facially implausible and contradicted by plaintiffs' own prior declarations and discovery responses.  Further, plaintiffs are pressing these claims notwithstanding admissions that they are unable to enter the United States to appear for trial due to past illegal conduct.  Plaintiffs' parole application letter states that Mr. Zednik was unlawfully in the United States for more than a year and was ordered removed from the United States "on or about October 30, 2007," and explains that Mr. Zednik "therefore currently is

---

[1]    Six other named plaintiffs have accepted settlement offers by Wal-Mart; and two other named plaintiffs have not been found.  Mr. Zednik and Ms. Jaros are the only named plaintiffs who have declined Wal-Mart's settlement offers.

[2]    Wal-Mart has filed a separate opposition to plaintiffs' untimely summary judgment motion.

inadmissible" to the United States.  Plaintiffs "believe Ms. Jaros is also inadmissible at the

current time."  Thus, plaintiffs admit that "Mr. Zednik and Ms. Jaros do not qualify for any type

of visitor visa" and that they "anticipate[] denial" of their respective applications for visitor visas

from embassies in Amsterdam and Poland.  Declaration of James L. Linsey ("Linsey Decl."), Ex.

A (Docket No. 224).

As shown below, plaintiffs' efforts to postpone the trial date and thereby avoid

involuntary dismissal should be rejected.  Plaintiffs were deported or removed from the country

nearly three years ago, yet made no attempt until October 20, 2010 – after the trial was scheduled

– to seek re-entry or even to notify the Court and Wal-Mart of any desire to appear by video

transmission rather than in person.  In fact, their own counsel urged the Court in November 2009

and again in December 2009 to set an immediate trial date, without ever mentioning the need –

let alone timely moving – for any relief or accommodation due to plaintiffs' inability to appear

for trial.  *See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification at 2

(filed Nov. 13, 2009) (Docket No. 200) (urging Court to "proceed to schedule a trial date to

resolve this action which has now been pending for over six years"); Plaintiffs' Reply

Memorandum of Law in Support of Motion for Final Certification at 4 (filed Dec. 7, 2009)

(Docket No. 204) (again urging that "this matter should be finally certified as a collective action

. . . and set down for trial over six years since it was filed").

Given these circumstances, plaintiffs have not shown – and cannot show – cause

sufficient to proceed with their claims.  Their immigration status, which results from their prior

illegal conduct, renders them unable to participate at trial.  And the prospects of plaintiffs' return

to the United States are, by their own admission, extremely low.  This matter has already been

pending for seven years, largely because of plaintiffs' vexatious litigation tactics (described

below). Allowing further delay of the case, based on this record, would be unjustified and prejudicial to Wal-Mart.

For the same reasons, plaintiffs' belated request to appear by video transmission pursuant to Fed. R. Civ. P. 43(a) is improper and should be denied. The rule only authorizes such an allowance in "compelling circumstances" when a witness is unable to attend trial for "unexpected reasons, such as accident or illness . . . ." Fed. R. Civ. P. 43(a) 1996 advisory committee notes. Because plaintiffs have been out of the country for nearly three years, they cannot plausibly argue at this late date that there are compelling, unexpected circumstances that have made them unable to attend trial. And because plaintiffs' claims involve fact-specific inquiries concerning their employment status and working conditions, as well as the circumstances surrounding their false imprisonment claims, at multiple store locations, their absence from the courtroom would severely prejudice Wal-Mart's ability to defend itself.

Accordingly, plaintiffs should be involuntarily dismissed due to their inability to appear for trial, pursuant to Fed. R. Civ. P. 41(b).

## III. PLAINTIFFS' INABILITY TO APPEAR FOR TRIAL MAKES DISMISSAL APPROPRIATE UNDER RULE 41(b).

### A. The Six *Poulis* Factors Weigh In Favor Of Dismissal.

In *Poulis*, the Third Circuit identified six factors that courts should weigh in deciding whether to involuntarily dismiss a case under Rule 41(b): "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis omitted). The Third Circuit has "never required complete

- 3 -

satisfaction of each *Poulis* factor in order to justify the sanction of dismissal." *Adegbuji v. Middlesex County*, 347 F. App'x 877, 881 (3d Cir. 2009) (citing *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).  Rather, a district court is charged with balancing the factors and assigning them "appropriate weight in making the decision." *Adegbuji*, 347 F. App'x at 881 (quoting *Quality Prefabrication, Inc. v. Danial J. Keating Co.*, 675 F.2d 77, 80 (3d Cir. 1982)).

As shown below, each of the six *Poulis* factors weighs in favor of involuntary dismissal of this matter.

### 1.    Plaintiffs Are Personally Responsible For Their Inability To Appear.

Both plaintiffs are solely responsible for their inability to appear for trial.  Plaintiffs concede that they are not eligible for entry into the U.S. due to their immigration status.  Mr. Zednik admits to having violated U.S. immigration law for more than a year, resulting in his deportation.  Ms. Jaros does not specify the reason for leaving the country, but suggests that it was likewise the result of her unlawful presence in the United States.

As the Third Circuit held in *Adegbuji*, a plaintiff's inability to participate at trial prejudices a defendant and makes alternative sanctions inappropriate: "This is not a case of where other sanctions are available.  It is a lack of prosecution due to [plaintiff's] immigration status." *Adegbuji*, 347 F. App'x at 880-81 (quoting the district court's opinion in *Adegbuji*); *see also Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187 (10th Cir. 2004) (holding that plaintiffs who are barred from re-entry to the United States due to a prior deportation are responsible for that condition and thus are not "unavailable" under Fed. R. Civ. P. 32 and Fed. R. Evid. 804).  Because plaintiffs are unable to prosecute their claims due to their own illegal conduct, dismissal is required on this ground alone.

**2.      Plaintiffs' Attempt To Allege New Facts Relating To Their False Imprisonment And Overtime Claims Is Untimely And Prejudicial To Wal-Mart.**

During the long course of these proceedings, plaintiffs filed initial disclosures, submitted declarations, responded to a Court-ordered questionnaire, and produced a "diary" and other records relating to their alleged work at various Wal-Mart stores.  In none of these materials did plaintiffs ever allege any facts supporting a false imprisonment claim.  To the contrary, their complaints generally related to missed wage payments, the inconveniences of using a "heavy vacuum," and that in one store it was "not pleasant or advantageous" to have to wait fifteen to twenty minutes for a manager to unlock the door.  *See* Declaration of James L. Linsey, Ex. C (P-604, P-1360, P-1391, P-1401, P-1404-P-1405) (Docket No. 222); Supplemental Declaration of Teresa Jaros in Support of Motion for Partial Summary Judgment ("Jaros Supp. Decl."), Ex. A (Questionnaire: Q-775), Ex. B ¶ 5; Supplemental Declaration of Petr Zednik in Support of Motion for Partial Summary Judgment ("Zednik Supp. Decl."), Ex A (Questionnaire: Q-770, Q-771), Ex. B ¶ 5.  By the Court's order, fact discovery in the case closed on October 1, 2007. 5/15/07 Order on Status Conference at 2 (Docket No. 159).

As part of their untimely summary judgment motion, plaintiffs have now submitted "supplemental declarations" in which they allege several new facts and claims relating to their purported "false imprisonment" in certain stores.[3]  Plaintiffs also allege a new theory for

_____

[3]      *See, e.g.*, Zednik Supp. Decl. ¶ 5 ("Other than the Wal-Mart night manager, I do not know how we could get out of the Store even in case of a fire or other emergency.  Nobody ever showed us any emergency exit . . . .") and ¶ 10 ("I had excruciating pain from a toothache . . . But Steve refused to unlock the door and let me out . . . ."); Jaros Supp. Decl. ¶ 3 ("[O]n the Saturday and Sunday shifts the night manager did not work and there was no one there with a key and we did not know of any way to get out even in case of fire or other emergency.  Nobody at Wal-Mart ever showed us any emergency exit.  At work during one of these weekend shifts, I developed severe stomach pains and bleeding.  I wanted to leave work to take some medicine and go to bed.  But I could not do so.").

calculating their overtime claims.[4]  These new allegations, made three years after the close of

fact discovery, are untimely and improper.  Wal-Mart has been denied any meaningful

opportunity to test these claims during discovery and in previous rounds of briefing.

Moreover, along with plaintiffs' wage claims, these latest allegations involve working

conditions and employment terms at Wal-Mart stores in three states during 2002 and 2003.  The

memories of witnesses have significantly decreased with the passage of time.  Indeed, plaintiffs

admit to this fact in their "supplemental" filings:  "[Zednik and Jaros] believe that again they

used Johnson's Wax on the floors and were provided with Wal-Mart supplies and a Wal-Mart

Maintenance Manual (in English) though they cannot be completely certain after all of this

time."  Summ. J. Mem. at 9 (Docket No. 222).

In affirming an involuntary dismissal in *Adegbuji*, the Third Circuit recounted the district

court's finding that further delay in prosecution of the case would be unfair to the defendant

because "witnesses' memories fade . . . some of the witnesses may not be available, further

prejudicing defendants.  So it seems to me, there's substantial prejudice that warrants dismissal."

*Adegbuji*, 347 F. App'x at 881.  This case is already two years older than *Adegbuji* was when it

was dismissed.  Plaintiffs' attempt to prolong the proceedings by injecting new allegations

relating to events that occurred seven or more years ago is improper and prejudicial to Wal-Mart.

### 3.       Plaintiffs Were Dilatory In Pursuing Their Claims.

In their complaint, plaintiffs conceded that they were both "subject to deportation from

the United States at the initiative of USICE."  Second Amended Class Action Complaint

("SAC") ¶¶ 21-22 (Docket No. 75).  Had plaintiffs been more realistic in their case theories and

---

[4]       Memorandum of Law in Support of Motion for Partial Summary Judgment ("Summ. J.
Mem.") at 35-37 (Docket No. 222).

claims, this matter could have been resolved, by settlement or trial, years ago – before plaintiffs were deported (or departed) from the United States.  Instead, as more fully described below, plaintiffs persisted in pursuing unfounded, unreasonable, and unrealistic claims and litigation strategies that have unduly prolonged the case.

Moreover, when their deportation (or other departure) occurred nearly three years ago, neither plaintiff made any apparent attempt to gain re-entry to the United States until October 20, 2010.  Nor did they timely notify the Court or Wal-Mart of any need to postpone trial or seek other special accommodations.  To the contrary, their own counsel urged the Court in November and December 2009 to set an *immediate* trial date.

Given this record of dilatory conduct, plaintiffs cannot justify their last-minute attempt to avoid involuntary dismissal based on the unlikely hope that they may be able to return to the United States someday and appear for trial.

4. **Plaintiffs' Conduct Of This Litigation Has Been Vexatious And Already Caused Substantial Unwarranted Delays.**

Although plaintiffs claim to have acted "actively and diligently" in prosecuting their claims, the record shows that they in fact have needlessly protracted and complicated this case. Plaintiffs chose to pursue their overtime claims as part of an unrealistic class action asserting baseless RICO, civil rights, and false imprisonment claims on behalf of a putative class of "thousands" of workers in thousands of stores around the country.  SAC ¶ 31 (Docket No. 75). This ill-advised course has resulted in years of wasteful litigation that has needlessly delayed and complicated the proceedings.

Even after the RICO and civil rights claims were dismissed with prejudice, plaintiffs persisted in proposing an implausible collective wage action on behalf of individuals who allegedly worked for more than 70 different contractors in 180 stores and 33 states throughout

the country.  Wal-Mart identified numerous fundamental problems with plaintiffs' proposed

collective action over four years ago.  *See, e.g.*, Oct. 17, 2006 Letter from Robert H. Bernstein to

Magistrate Judge Madeline Cox Arleo ("[T]he information gleaned from these unsworn

statements makes clear that plaintiffs' proposed collective action would be nationwide in scope,

unmanageable, and unrealistic.").  And in 2007, the Court warned plaintiffs about unduly

prolonging the litigation.[5]

In addition, plaintiffs sought reconsideration of several Court orders without offering any

new factual or legal basis for such requests; forced unnecessary motions practice on the sealing

of confidential information, while failing to take steps to protect the plaintiffs' own private,

sensitive information; burdened the Court with wasteful and baseless motions; and engaged in

other dilatory tactics.  For example:

> o  The Court granted plaintiffs' motion for facilitated notice to the putative
>    FLSA collective action on December 29, 2004.  On November 30, 2005,
>    plaintiffs moved to extend the notice period, which ultimately extended *over
>    two years*.  Plaintiffs later sought to include consents that were not timely
>    submitted under the Court's order, requiring further unnecessary briefing.  *See*
>    Docket No. 139.

> o  Plaintiffs opposed for no substantive reason Wal-Mart's motions to seal
>    confidential information, requiring burdensome motion practice over several
>    months in 2006 and 2007.  Docket No. 135.

> o  In October 2007, the Court ordered plaintiffs to make a settlement demand;
>    plaintiffs failed to do so.  *See* Docket No. 175 (transcript of October 5, 2007
>    conference).  Upon later order, plaintiffs submitted unrealistic settlement

---

[5]     In 2007, the Court urged plaintiffs to make a reasonable settlement demand to avoid
prolonging the case, stating that "I have cases FLSA [sic] that have many more people done in a
year or two. . . .  [I]sn't this a case that you're thinking about mediation and settling before you
. . . go crazy with attorneys fees on both sides?"  10/5/07 Discovery Conference Tr. at 41 (Arleo,
M.J.) (Docket No. 175).  "[T]he damages . . . are in the scheme of things with what you've
already spent in attorneys fees, probably modest."  *Id.* at 46 (Arleo, M.J.).  "[T]he persons who
were claiming injury are the ones whose rights and remedy should be at the forefront of the
case."  *Id.* at 45 (Arleo, M.J.).

demands, forcing briefing on the proper scope of the conditional collective action and the proper method for calculating overtime claims. *See* Docket Nos. 180, 183.

o   Plaintiffs' counsel rejected the Court's proposal to mediate, instead insisting on the appointment of former President Jimmy Carter as a mediator. *See* Docket No. 175 (transcript of October 5, 2007 conference).

o   Plaintiffs' counsel refused to participate in and sought to delay Court-ordered conferences. *See* Docket Nos. 213-219.

- Plaintiffs have also unnecessarily complicated and prolonged discovery:

  o   On October 27, 2006 and August 3, 2007, plaintiffs filed motions to compel documents from Wal-Mart, both times without having conferred with Wal-Mart in contravention of the local rules. *See* Docket Nos. 124, 164; *see also* N.J. L. Civ. R. 37.1(a)(1) ("Counsel shall confer to resolve any discovery dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. This presentation shall precede any formal motion.").

  o   On August 27, 2007, plaintiffs' counsel refused a request from Wal-Mart's counsel to confer regarding plaintiffs' objections to Wal-Mart's document production, directing Wal-Mart's counsel instead to respond to plaintiff's motion filed on August 3, 2007. *See* Docket No. 166. Plaintiffs then sought leave from the Court to file a reply brief in support of their motion to compel. *See* Docket No. 168.

  o   The Court dismissed plaintiffs' first motion to compel in an order dated April 13, 2007. *See* Docket Entry No. 155. After granting a hearing on plaintiffs' August 2007 motion to compel, the Court ordered the parties to confer on the remaining discovery issues. Wal-Mart addressed each of plaintiffs' objections to its production, *see* Docket No. 176, and plaintiffs raised no further issues.

### 5.   Alternative Sanctions Would Be Ineffective.

Alternative sanctions would be inadequate in this case. As the Third Circuit held in *Adegbuji*, a plaintiff's inability to appear for trial prejudices a defendant and makes alternative sanctions inappropriate. 347 F. App'x at 880-81. Wal-Mart has the same right to fairness in this case and would be prejudiced by plaintiffs' absence from the courtroom. These considerations compel dismissal of this action for the same reasons found in *Adegbuji*.

### 6.    Plaintiffs' Claims Lack Merit.

For the reasons shown in Wal-Mart's accompanying opposition to plaintiffs' untimely summary judgment motion, plaintiffs' past statements and admissions, as well as other evidence in the case, raise significant doubts about their wage and false imprisonment claims. *Cf.* 6/25/10 Memorandum Opinion at 7 (Docket No. 215) (finding that Wal-Mart has viable defenses to plaintiffs' wage claims); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 334 (D.N.J. 2005) (expressing skepticism over plaintiffs' false imprisonment claims, noting that "[p]hysical force does not amount to an actionable restraint if there is a safe avenue of escape through an exit . . . ." The term "reasonable means of escape" includes "walking through an emergency exit door" even "if such exit sounds off an alarm."). Given the strength of Wal-Mart's defenses to plaintiffs' claims, this last *Poulis* factor, like the others, weighs decidedly in favor of involuntary dismissal.

Finally, the record shows that plaintiffs have thwarted several efforts by the Court and Wal-Mart to reach a reasonable compromise of plaintiffs' claims over the past many years of this case. Despite these difficulties, Wal-Mart has now reached fair and reasonable settlement with all but the two remaining plaintiffs, Mr. Zednik and Ms. Jaros. Although these plaintiffs are certainly entitled to reject Wal-Mart's settlement offer, they should not be entitled to persist in pursuing their claims through further vexatious litigation, particularly when they have long known that they would be unable to participate at trial.[6]

---

[6]     *See* Certification of Gilberto M. Garcia in Support of Motion to Withdraw as Counsel for Petr Zednik and Teresa Jaros ¶¶ 11-15 (Docket No. 225).

## IV. PLAINTIFFS' PROPOSED ALTERNATIVES TO INVOLUNTARY DISMISSAL ARE NOT JUSTIFIED AND, IF PERMITTED, WOULD BE PREJUDICIAL TO WAL-MART.

### A. Delay Of The Trial Date Would Be Futile And Prejudicial To Wal-Mart.

Plaintiffs' summary judgment motion is improper and untimely, for the reasons shown in Wal-Mart's separate opposition brief. Even if the Court were to consider the motion on the merits, there are numerous disputed issues of fact that are central to plaintiffs' overtime and false imprisonment claims. Thus, plaintiffs' untimely summary judgment motion does not justify any further delay of this action.

### B. Plaintiffs Have Not Shown Good Cause Or Any "Compelling Circumstances" Justifying An Exception To The Requirement Of Live Testimony.

The Federal Rules of Civil Procedure "require that witness testimony be presented live, in open court" unless "the requesting party can establish 'good cause in compelling circumstances.'" *Prideaux v. Tyson Foods, Inc.*, No. 09-60469, 2010 WL 2813813, at *3 (5th Cir. July 19, 2010) (quoting Fed. R. Civ. P. 43). "The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Fed. R. Civ. P. 43 1996 advisory committee notes. Accordingly, unless a witness is unavailable for unexpected reasons, such as accident or illness, "[o]ther possible justifications for remote transmission must be approached cautiously." *Id.* "[A] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.* A trial court has broad discretion to require live testimony at trial, and its decision to require live testimony is reviewed under an abuse of discretion standard. *Prideaux*, 2010 WL 2813813, at *3.

- 11 -

Plaintiffs have not met – and cannot meet – their burden to show "good cause and compelling circumstances" warranting remote testimony here.  As shown above, plaintiffs' inability to appear for trial results from their own illegal conduct and was foreseeable.  *See Adegbuji v. Middlesex County*, 347 F. App'x 877 (3d Cir. 2009); *Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187 (10th Cir. 2004).  For nearly three years both plaintiffs have known that they would be unable to participate at trial.  Yet, they failed to give the Court and Wal-Mart prior notice of any request for special accommodation.  To the contrary, their counsel urged the Court to set an immediate trial date in November and December 2009, without ever mentioning (let alone moving for) any such relief.  These facts alone preclude plaintiffs from now claiming that there are unexpected, "compelling circumstances" that justify their absence from the courtroom.

Moreover, plaintiffs are parties – not just fact witnesses.  They are pursuing fact-specific claims, including work activities and alleged false imprisonment at multiple stores, that involve critical questions of credibility and reliability.  In *Garcia-Martinez*, a Honduran citizen alleging civil rights claims was not permitted to submit his earlier deposition testimony in lieu of personal appearance at trial.  The court observed that "[w]hen the 'key factual issues' at trial turn on the 'credibility' and 'demeanor' of the witness, we prefer the finder of fact to observe live testimony of the witness.  This is especially true when the witness is the plaintiff." *Garcia-Martinez*, 392 F.3d at 1191-92.  Similarly here, it would be highly prejudicial to Wal-Mart for plaintiffs to be permitted to present their testimony remotely, rather than in person at trial.

Plaintiffs' failure to provide any advance notice of their request to appear by video transmission is also prejudicial to Wal-Mart.  As shown above, plaintiffs have attempted to inject new factual allegations concerning their alleged "false imprisonment" claims and overtime

damages in "supplemental declarations" accompanying their untimely summary judgment motion.  Wal-Mart had no prior notice of these new fact claims and thus no opportunity to seek additional discovery from plaintiffs relating to them.  Under these circumstances, it would be unfair for plaintiffs to avoid personal appearances at trial, where these and other of their claims can be tested through the presentation of evidence and cross-examination before the trier of fact.  In addition, Wal-Mart's ability to confront plaintiffs and present documentary evidence during cross-examination would be severely compromised by the use of video transmission rather than live testimony.

Courts have denied requests to conduct testimony remotely, including in circumstances where, as here, the requesting party has had ample notice of the need for remote testimony but failed to raise the issue until the last minute.  In *Air Turbine Technology v. Atlas Copco AB*, for example, the court held that plaintiffs had not met their burden under Rule 43 where they requested video testimony just one month prior to trial.  217 F.R.D. 545, 546 (S.D. Fla. 2003).  The court noted that "Plaintiff has known from the early stages of this case that witnesses from outside of the United States would be testifying at trial."  *Id.*  Similarly, in *Prideaux*, the court denied a plaintiff's request for telephonic testimony that plaintiff made "just two weeks before trial."  2010 WL 2813813, at *3.

The cases that plaintiffs cite where video testimony was allowed are readily distinguishable.  In *Lopez v. NTI, LLC*, for example, the court granted permission for seven plaintiffs pursing FLSA claims to testify at trial via video conferencing.  No. 08-1579, 2010 WL 3703287, at *2-3 (D. Md. Sept. 16, 2010).  However, unlike the present case, there was no dispute over whether the defendants were joint employers of the plaintiffs, and numerous other plaintiffs were available to present live, in-court testimony in support of the absent plaintiffs'

- 13 -

claims. Nor were the *Lopez* plaintiffs claiming "false imprisonment," which, as discussed above, makes it critically important for plaintiffs here to appear at trial to test the credibility of such claims. Moreover, in contrast to plaintiffs' last-minute request in this case, the *Lopez* plaintiffs promptly moved for permission to appear by video as soon as the need for this accommodation was known, and *before* the close of discovery. *Id.* at *2. This gave the defendants there adequate time to respond to and prepare for the use of remote testimony. Wal-Mart has had no such opportunity. For all these reasons, *Lopez* is not persuasive precedent for the present case.

At least three of the other cases cited by plaintiffs involved witnesses who were not parties to the litigation. *See United States v. Moruzin*, No. 05-306, 2007 WL 2914903, at *1 (D.N.J. Oct. 1, 2007) (discussing the propriety of video testimony of the prosecution's principal medical witness for a pretrial hearing in a criminal matter); *Beltran-Tirado v. INS*, 213 F.3d 1179 (9th Cir. 2000) (holding that plaintiff was not denied constitutional due process when an elderly witness whose social security number the plaintiff had illegally used was allowed to testify via telephone at the plaintiff's deportation hearing); *Sussel v. Wynne*, No. 05-444, 2006 WL 2860664 (D. Haw. Oct. 4, 2006) (involving testimony of an ancillary witness who would testify as to the reliability of a government report offered as evidence, not as a fact witness regarding the merits of the case). Moreover, each of these cases involved testimony at a pre-trial hearing or administrative hearing – not at a trial.[7]

In two other cases cited by plaintiffs, the issue of video testimony was part of a laundry list of post-hoc objections to an adverse judgment. In *Adam v. Carvalho*, 138 F. App'x 7 (9th

---

[7]     *Moruzin* involved a pre-trial hearing to determine whether the government had the right to involuntarily administer antipsychotic medication to the defendant in an attempt to restore his mental competence to stand trial; *Beltran-Tirado* involved a deportation hearing; and *Sussel* involved a pre-trial conference.

Cir. 2005) (unpublished), the plaintiff appealed his unsuccessful civil rights action, contending

that the defendant had engaged in various misconduct, the district judge was biased, and the

court had abused its discretion by allowing video testimony.  Similarly, in *El-Hadad v. U.A.E.*,

496 F.3d 658 (D.C. Cir. 2007), an employer appealed an adverse judgment of breach of contract

and defamation based on six grounds, one of which was the use of video testimony; the court

held that under the facts of the case, the video testimony did not prejudice defendant in part

because "the district court insisted that [the party requesting video testimony] prove he had

pursued and repeatedly been denied a visa to the United States."  *Id.* at 669.

     The remaining cases cited by plaintiffs are equally inapposite.  *Haimdas v. Haimdas*, No.

09-2034, 2010 WL 2342377 (E.D.N.Y. June 8, 2010) and *Matovski v. Matovski*, No. 06-4259,

2007 WL 2600862 (S.D.N.Y. Aug. 31, 2007), both child custody cases, mention the use of video

testimony but reach no holding on the issue, contain no discussion of Fed. R. Civ. P. 43(a), and

do not indicate whether the question of video testimony was even contested.  In *Official Airline

Guides, Inc. v. Churchfield Publications, Inc.*, 756 F. Supp. 1393, 1399 (D. Or. 1990), the party

objecting to video testimony had itself utilized videotaped testimony, and there were multiple

witnesses in the case who had testified at trial.  In *In re Vioxx Products Liability Litigation*, 439

F. Supp. 2d 640, 641-42 (E.D. La. 2006), the plaintiffs sought to take video testimony of a

corporate representative for defendant, while defendant opposed any requirement for appearance

by that witness, who had already testified at numerous depositions and in a related trial.  In

*Dagen v. CFC Group Holdings Ltd.*, No. 00-5682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003),

the plaintiff had sued his former employer, a small business located in Hong Kong, for wrongful

termination.  The court allowed video testimony by defendants only after finding that the

defendants' witnesses "comprise a large portion of defendants' Hong Kong labor force" and that

requiring them to travel would "more or less grind defendants' business to a halt." *Id.* at *1. And in *FTC v. Swedish Match North America*, Inc., 197 F.R.D. 1, 1 (D.D.C. 2000), the court allowed video testimony where the requesting party had provided "ample" advance notice that the witness would testify, and there were other available safeguards.

Finally, *Edwards v. Logan*, 38 F. Supp. 2d 463 (W.D. Va. 1999) involved a case under the Prison Litigation Reform Act of 1996, which explicitly authorizes the use of video testimony in pre-trial proceedings for § 1983 claims.  Notably, the *Logan* court emphasized that the disadvantages of video conferencing "may be particularly detrimental where it is a party to the case who is participating by video conferencing, since personal impression may be a crucial factor in persuasion." *Id.* at 467.  These disadvantages would be particularly acute here, where Mr. Zednik and Ms. Jaros are the only two remaining plaintiffs and are alleging wage and false imprisonment claims involving multiple stores, contractors, and Wal-Mart personnel.

## V.    CONCLUSION

For all of these reasons, the Court should deny plaintiffs' requests for delay and for leave to appear at trial via videoconference, and should dismiss plaintiffs' FLSA and false imprisonment claims pursuant to Rule 41(b).

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP
Attorneys for Defendant Wal-Mart Stores, Inc.


By: /s/ Thomas H. Golden
      Thomas H. Golden

      787 Seventh Avenue
      New York, NY  10019
      tgolden@willkie.com

Of Counsel:

David P. Murray, Esq. (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C.  20006-1238
dmurray@willkie.com

Dated:  November 1, 2010